BANQUE FRANCO-AMERICAINE v. BERGSTROM et al.

(Supreme Court, Appellate Division, First Department. March 3, 1916.)

1. EVIDENCE ☞444—PAROL EVIDENCE TO VARY WRITING.

Defendants purchased bank stock from a bank, and accepted and delivered drafts in part payment. The parties co-operated in preparing letters as a part of the transaction, stating the terms of the sale, but not stating or suggesting that the drafts were delivered upon any condition. Held, that oral evidence that it was agreed that they were not to become complete and effective obligations, unless the bank sold certain bonds for defendants, was inadmissible, since, while it is admissible to prove a conditional delivery of notes and drafts, for the purpose of showing that they never became complete obligations, when the parties have reduced to writing, in documents separate from the notes or drafts, the conditions under which the notes or drafts are delivered, they may not vary the terms of such writings by showing alleged oral agreements contradicting them.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1929–1944, 2049; Dec. Dig. ☞444.]

2. BILLS AND NOTES ☞517—ACTIONS—SUFFICIENCY OF EVIDENCE.

In an action on drafts accepted and delivered as part payment for corporate stock, evidence held not to show an agreement that they should not become complete obligations, unless the holder sold certain bonds for the acceptors.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1807–1815; Dec. Dig. ☞517.]

3. BILLS AND NOTES ☞343—BONA FIDE HOLDERS—NOTICE.

Defendants accepted and delivered drafts in part payment for stock in a bank, and the drafts were negotiated to plaintiff. Defendants claimed that it was orally agreed that they were not to be complete obligations unless the drawee sold certain bonds for defendants, and that before delivery thereof plaintiff's manager was told that the acceptance was not to be complete until these bonds were sold, but no such condition was contained in letters evidencing the contract between the parties. Held, that the claimed notice to plaintiff did not deprive it of the standing of an innocent holder, since such notice only required inquiry by plaintiff of

the drawee as to the details of the transaction in which the drafts were delivered, and, had plaintiff sought this information, it would have ascertained that the drafts were free from such a condition as was claimed by defendants.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 853–855, 864, 865; Dec. Dig. ☞343.]

4. BILLS AND NOTES ☞60—LETTERS—FILLING BLANKS.

Defendants purchased bank stock, and accepted and delivered drafts in part payment. The contract was evidenced by a letter from the bank to defendants, stating that the drafts were to be renewed every three months, and to be payable finally at latest term on January 10, 1913, and a letter from defendants to the bank, stating that the date of payment had been left blank, to be filled in by the bank to suit its convenience, and that the drafts were to be subject to renewals, however, so that they should become finally payable on January 10, 1913. The bank filled in the date of maturity as January 12, 1913. Held, that while, if a date prior to January 10, 1913, had been filled in, defendants would have had a right to renewals, so that the drafts need not be paid before that date, it was optional with the bank not to fill in an earlier date, and the adding of two days worked no detriment to defendants, and hence there was a substantial compliance with Negotiable Instruments Law (Consol. Laws, c. 38) § 33, providing that, when an instrument is wanting in any material particular, the person in possession has prima facie authority to fill up the blanks, that a signature on a blank paper, delivered by the person making it, in order that it may be converted into a negotiable instrument, operates as prima facie authority to fill it up, but that it must be filled up strictly in accordance with the authority given.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 85–94; Dec. Dig. ☞60.]

5. BILLS AND NOTES ☞378—BONA FIDE HOLDERS—DEFENSES AVAILABLE.

Even though the blanks were not filled in strictly, an innocent holder for value was protected under the express provisions of the last paragraph of Negotiable Instruments Law, § 33.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 985–992; Dec. Dig. ☞378.]

Appeal from Special Term, New York County.

Action by the Banque Franco-Americaine against Oscar B. Bergstrom and another, copartners doing business as Bergstrom & Co. From an order setting aside a verdict and granting a new trial, defendants appeal. Modified, by striking out provision for new trial, and affirmed as modified.

Argued before CLARKE, P. J., and SCOTT, SMITH, PAGE, and DAVIS, JJ.

Oscar B. Bergstrom, of New York City, for appellants.

Martin A. Schenck, of New York City (Julien T. Davies, of New York City, on the brief), for respondent.

DAVIS, J. In this case a verdict in favor of the defendant was set aside as against the evidence and the weight of evidence. The action was brought by plaintiff as the holder of two drafts, for $10,000 each, made by the Banque Alsacienne of Paris to their own order, and accepted by the defendants, and alleged to have been delivered in part payment of defendant's subscription to the capital stock of the Banque Alsacienne. The defense was that the drafts had been accepted and

delivered with a condition that the drafts were not to become complete and effective obligations until the performance of the condition, that the drafts had been negotiated in breach of the condition, and that the plaintiff received the drafts with knowledge of the fraud.

The defendants claimed that the drafts were not to become complete liabilities unless and until the Banque Alsacienne should sell $1,000,000 of first mortgage bonds of the San Antonio Brewing Association, which were to be placed in their hands for that purpose by the defendants. The defendants claimed that this condition was agreed to orally, that the Banque Alsacienne through its own fault failed to sell the bonds, and for that reason the condition on which the drafts were to become complete obligations was never performed; that the Alsacienne Banque had fraudulently negotiated the drafts; and that the plaintiff had knowledge of the alleged fraud, and was not an innocent purchaser for value. Before the making of these drafts, and their acceptance by defendants, there were many conversations between the defendants and the Banque Alsacienne. After these conversations the parties came together and deliberately agreed upon the form of two letters, which were to and did accompany the making of the drafts and their acceptance and delivery by the defendants.

The defendant Bergstrom claims that he was solicited by the Banque Alsacienne to make an arrangement with that bank for the purpose of floating American securities upon the European market. After various conversations referred to above, Bergstrom agreed to purchase 2,000,000 francs worth of shares of the bank—conditionally, as he claims; unconditionally, as claimed by plaintiff. These preliminary negotiations resulted in the writing of the following letters:

"April 18, 1912.

"Mr. Oscar Bernard Bergstrom, Hotel Meurice, Paris—Dear Sir: We hereby beg to confirm your having purchased from us: Frs. 2,000,000 (two millions) shares of our bank, 25% paid. It has been agreed upon that in settlement of this purchase you hand us 10 drafts, $10,000 each, accepted by your firm, Bergstrom & Co., New York; these drafts to be renewed every three months, payable finally at latest term on January 10, 1913. You will find inclosed the said drafts for your signature and return. Please to let us know in whose name the shares are to be registered on our books, whether in the name of the firm, Bergstrom & Co., or in that of Messrs. Bergstrom & Taylor, New York.

"Yours faithfully,                         Banque Alsacienne de Paris
                                           "[Signed]   Etienne Muller."

"April 19, '12.

"Banque Alsacienne de Paris, Paris, France—Gentlemen: Inclosed we hand you ten drafts for ten thousand dollars ($10,000) each, to cover the first payment of twenty-five per cent. (25%) on our subscription to two millions frs. of your capital stock. The drafts are duly accepted by us, and the date of payment left blank, to be filled in by you to suit your convenience. These drafts are to be subject to renewals, however, so that the drafts shall become finally payable Jan 10, 1913. Exchange to be settled on final payment of drafts on a basis of five hundred thousand frs. (500,000 frs.). The stock certificates to be held by you duly indorsed as security for these drafts.

"Very truly,                                      Bergstrom & Co."

These letters were put in evidence by the plaintiff. The defendants were allowed to give oral evidence at the trial that there was a con-

dition agreed to orally between the parties that the defendants' subscription to the capital stock of the Banque Alsacienne and the drafts should not become complete obligations until the brewery bonds had been sold by defendants. This evidence was objected to by the plaintiff as tending to vary the terms of the written agreement between the parties, but the court overruled the objection.

[1, 2] We think the objection should have been sustained, inasmuch as it not only varied the terms of the drafts, but it also varied the written agreements contained in the letters accompanying the delivery of those drafts, showing the circumstances under which the drafts were made, accepted and delivered. While it is admissible to prove a conditional delivery of notes and drafts, for the purpose of showing that they never became complete obligations because of the nonperformance of conditions precedent, still, when the parties themselves reduce to writing in documents separate from the notes or drafts the conditions under which the notes or drafts are delivered, they will not be permitted to vary the terms of those writings by showing alleged oral agreements contradicting them. As stated above, before the delivery of the drafts in question, the parties co-operated in preparing the letters of April 18 and 19, 1912, as a part of the transaction. There is nothing in these letters to suggest that the drafts were to be delivered conditionally. Certainly, had the parties intended to make the subscription to the stock and the payment of the drafts depend upon the sale of the brewery bonds, that important and vital fact would have been mentioned in these letters. At the trial the learned justice presiding allowed the defendants to prove this oral agreement, but after the verdict he was so impressed with the written proof negativing the claim of the defendants that he was constrained to set aside the verdict on the ground that it was against the evidence and against the weight of evidence, especially on the point of a diversion of the drafts before fulfillment of the alleged condition upon which they were accepted and delivered.

We think this testimony under objection ought to have been excluded altogether, and the verdict not only set aside, but a verdict directed for the plaintiff. All the evidence shows that the defendants actually purchased the stock and delivered the drafts in payment thereof unconditionally. The letters of April 18th and 19th referred to the purchase of the stock of the Banque Alsacienne. Defendants' Exhibit B, a letter written by the Banque Alsacienne to the defendants, states:

"The stock we sell to you, consists of shares of our bank, which we had taken over from Mr. Mayer-Bacum."

In the letter of April 16, 1912, written by Bergstrom to the Banque Alsacienne, he inquires about the shares and the total capital stock, and then inquires:

"Is the stock we take treasury stock, or the stock of some individual; and, if individuals, who?"

In the letter dated the 16th of April, 1912, written to Bergstrom by the bank, it is stated that Bergstrom is to have the right of nominating

two members in the board of directors of the bank. In the letter of April 18, 1912, the bank inquires as to the name in which the shares are to be registered, whether in the name of Bergstrom & Co. or the name of Bergstrom & Taylor. The evidence also shows that Bergstrom exercised acts of ownership over the bank stock by signing acceptances of transfer of the stock to his firm, by giving Muller, the president of the Banque Alsacienne, a power of attorney to vote the stock, and by executing a transfer in blank and leaving it with the bank to be held by it. We think the evidence shows that defendants bought the stock out and out, gave the acceptances in payment thereof, and that the acceptances were not given upon any condition other than those referred to in the deliberately prepared letters accompanying the subscription to the stock and the delivery of the acceptances.

[3] The defendant also claims that the plaintiff, Franco-American Bank of Paris, was not an innocent holder, and did not receive the drafts for value and in good faith. It appears that the drafts were indorsed by the Banque Alsacienne and by its president, Muller, and that they were then delivered to Brunner, who indorsed and parted with them to the plaintiff for value. The particular fact upon which defendants claim that the plaintiff is not a holder in good faith is that, before the delivery of the drafts to the Banque Alsacienne, Bergstrom met Brunner, who was the manager of the plaintiff bank, and told him in effect that he was making a purchase of stock of the Banque Alsacienne, and was going to give acceptances in payment, but that the acceptances were not to be complete obligations until the bonds of the Texas Brewery Company had been sold by the Banque Alsacienne. Brunner denies this conversation.

We think, even if this information was conveyed to Brunner, it would not necessarily affect the good faith of the plaintiff bank or of Brunner. As the respondent well contends, the most that it would require of Brunner to do would be an inquiry of the Banque Alsacienne as to the details of the transaction in which the drafts were delivered. Had Brunner sought this information, he would have ascertained the nature of the transaction as set forth in the drafts and the letters accompanying their delivery, and he would have learned, not that the drafts were unavailable for negotiation because of the nonperformance of a condition precedent, but that they were free from any such condition as claimed by defendants. Under these circumstances we think the plaintiff is a holder in good faith and for value.

[4, 5] The defendants also claim that the Banque Alsacienne failed to observe the agreements upon which the acceptances were made and delivered, by failing to comply strictly with the provision in the letters as to the filling in of the space left blank for the due date of the drafts. Bergstrom was to deliver ten drafts, for $10,000 each, accepted by his firm. The drafts were to be renewed every three months, but payable finally at latest term on January 10, 1913. Such was the statement contained in the bank's letter to Bergstrom under date of April 18, 1912. In answer to this letter Bergstrom wrote the letter of April 19th, inclosing drafts and stating as follows:

"The drafts are duly accepted by us, and the date of payment left blank, to be filled in by you to suit your convenience. These drafts are to be subject to renewals, however, so that the drafts shall become finally payable Jan. 10, 1913."

The bank filled in the 12th of January, 1913, as the due date—two days later than the date mentioned in Bergstrom's letter of April 19th. Defendants complain that the terms of the agreement required that a date should be filled in prior to the due date of the note, so as to allow renewals. We do not interpret these letters that way. The purpose of both parties was to have these drafts paid not before January 10, 1913. It was optional with the Banque Alsacienne to fill in a date prior to the due date; but, if it did so, Bergstrom was to have the right of renewal, so that the drafts need not be paid before January 10, 1913. The adding of two days, making the due date the 12th of January, instead of the 10th, certainly did not work to the detriment of Bergstrom. Under the circumstances, I think there was no violation of the agreement by the Banque Alsacienne as to the filling in of the blank, and that there was a substantial compliance with section 33 of the Negotiable Instruments Law. But, even if the blanks were not filled in strictly, the plaintiff as an innocent holder for value would be protected against that omission under the last paragraph of section 33 of the Negotiable Instruments Law, which provides that such a holder may enforce the draft as if it had been filled up strictly.

The two drafts in question are signed by the president of the Banque Alsacienne and another person, whose signature is illegible, and they are properly indorsed by the bank; but through an obvious error in printing the case on appeal the illegible signatures are omitted from the face and indorsement of the draft, and the signature of Muller as president is omitted from the indorsement. The court's attention was drawn to this omission on the argument, and the original drafts submitted to the court for its consideration.

The order appealed from is modified, by striking out the provision for a new trial, and judgment may be entered for the plaintiff, with costs, and, as so modified, the order is affirmed, with costs of this appeal to the respondent. Settle order on notice. All concur.