THE LAWRENCE-CEDARHURST BANK, Plaintiff, *v.* JOHN A. RUTH, Defendant.

County Court, Nassau County, February 25, 1937.

*Conklin & Bentley [Edward S. Bentley* of counsel], for the plaintiff.

*Pettit & Pettit [Carl E. Peterson* of counsel], for the defendant.

JOHNSON, J.   The action is on a promissory note, being a demand note, made by the defendant to the plaintiff.   The complaint shows that the note was secured by certain collateral which has been sold upon due notice to the defendant, the proceeds credited to the note, and that judgment is sought for the balance of the note remaining after such credit.

This is admitted by the defendant in his answer, who, however, interposes a separate defense alleging in substance that the note and securities were given by him to the bank under an express agreement that they were to constitute a deposit to guarantee the plaintiff's capital and surplus against impairment during the then financial disturbance; that no interest should be paid thereon; that the securities should be returned as and when the plaintiff's capital and surplus should be restored to its unimpaired value; and that no demand for payment of principal and interest should be made of the defendant until and unless the bank should go into

liquidation; which agreement was approved, ratified and confirmed both by the directors and by the stockholders of the plaintiff; that the plaintiff has not gone into liquidation, and that, therefore, the present action is prematurely brought.

It is apparent that this case is one of the aftermaths of the economic and financial depression which started in the year 1929 and disastrously affected the banking situation in this country. The capital and surplus of the plaintiff, like that of many other banks, became impaired. In order to meet such impairment and to guarantee against further impairment in order that the bank might continue to function and its depositors be saved from loss, this defendant and other directors of the bank deposited collateral and made an agreement such as this here under consideration. Unquestionably the directors were acting solely for the best interests of the bank and its depositors. Their action was open and above board, was specifically approved by the stockholders and apparently met the approval, if not the direct consent, of the bank examiners and Comptroller of the Currency, otherwise the bank would not have been permitted to have reopened after the closing of March, 1933. Hence, we have presented a case where unquestionably there was no fraud, misrepresentation or concealment, but rather an honest action on the part of the directors at great financial personal sacrifice to enable the bank to carry on and to protect its depositors.

However commendable their action may be from the ordinary standpoint of business honor, the question here presented is whether it was and is legally justified. At the time the action in question occurred the leading precedent on the subject by the Court of Appeals of this State was the case of *Higgins* v. *Ridgway* (153 N. Y. 130.)

In that case the defendant was a clerk employed by a firm, one of the members of which was a director of a bank. The clerk executed a note to the bank's order upon the agreement of the bank's president that he would not be held liable upon the note. The bank parted with nothing in consideration of the note, and the court held that a transaction with the bank was governed by the same considerations as a similar transaction between private individuals; and consequently when the bank attempted to enforce the instrument and the defendant set up as a defense the collateral agreement that it was not to be enforced against him, the court sustained the defense and refused to enforce it.

Apparently this decision constituted the Court of Appeals' exposition of the law until the recent decision of the same court in the case of *Mount Vernon Trust Co.* v. *Bergoff* (272 N. Y. 192).

In that case the defendant's mother had given the plaintiff bank a note which was fully secured by collateral deposited with the bank. The amount then owing upon the note was in excess of $34,000. At that time the defendant owned a mortgage upon which was due the principal sum of $30,000 and some interest, which had been guaranteed by an executive vice-president of the bank, under circumstances which might lead to the inference that such vice-president in making the guaranty was acting for the bank. As a result of conferences between the defendant's father and the bank, the latter agreed to take assignments of the bond and mortgage and credit the amount then due thereon as part payment of the note held by the bank against the defendant's mother. Accordingly, the bond and mortgage were assigned to the bank; the defendant made a new note for the difference between the amount due on her original note and the amount due on the bond and mortgage credited against her note, and her original note and the original collateral securing it were returned by the bank. It was then that the defendant, at the request of the bank, executed and delivered the note upon which the action was based. At the same time she received a collateral agreement from the bank to the effect that collection of such note was not to be made against her but would have to be made out of the collateral assigned as security therefor.

Referring to the *Ridgway Case (supra)* the Court of Appeals pointed out that since the time of the decision in that case it had become evident that the rule there applied might become a cloak for fraud, and had pointed out in the case of *Bay Parkway National Bank* v. *Shalom* (270 N. Y. 172) that an agreement to exempt the maker of the note from liability was not always enforceable as, for example, when such maker knows that his note is to be treated as an asset of the bank, as a result of which the examiners are deceived and depositors continue their relations with the bank on the faith of an assumed solvency. Referring then to the case under consideration, the court pointed out that no proof had been adduced to show the reason why the note in question had been given and at the same time the maker exempted from liability; and that the only inference deducible was that the bank desired to conceal the substitution of the bond and mortgage for the note of the defendant's mother secured by ample collateral. That concealment, however, was concealment on the part of the bank, and not on the part of the defendant. As the court said (pp. 195, 196):

" The defendant in making the note may have been ignorant of what the bank was trying to conceal. We are not told in this case whether the bank examiner was deceived, and indeed we do not know whether any one was deceived. A fictitious note delivered

to a bank, intended to become part of its apparent assets, though not intended to be enforceable, is in itself a continuing falsehood calculated to deceive the public, and any person delivering such a note becomes a party to the falsehood.

" In such case it is immaterial whether the note was based on good consideration or not. The stability of banks is a matter of such public concern that the State or Federal government regulates the affairs of each bank and periodically examines its apparent condition. The State cannot sanction any device intended to give a false appearance to a transaction or increase the apparent stability of a bank. The defendant may not have intended to deceive any person, but when she executed and delivered to the plaintiff bank an instrument in the form of a note, she was chargeable with knowledge that, for the accommodation of the bank, she was aiding the bank to conceal the actual transaction. Public policy requires that a person who, for the accommodation of the bank executes an instrument which is in form a binding obligation, should be estopped from thereafter asserting that simultaneously the parties agreed that the instrument should not be enforced."

After careful consideration I cannot escape the conclusion that the decision of the Court of Appeals in that case governs the situation here presented. It may be urged that in the case of *Mount Vernon Trust Co.* v. *Bergoff* (*supra*) the bank desired to conceal the true situation and that the note given was by terms of the collateral agreement enforcible in no event against the maker, but was required to be satisfied solely out of the collateral; and that in the present case there was no attempt by the bank or its officers at concealment, but rather a transaction known to and approved by the directors, the stockholders and the banking authorities. However, the decision did not rest upon the act of the bank, but the act of the defendant. It must be assumed that in the *Mount Vernon Trust Company* case the defendant was ignorant of the attempt of the bank to conceal the true facts of the situation. We must further assume that the bank examiners were not deceived and that no one was misled. Nevertheless, the announced rule of estoppel was applied. In other words, although the defendant had done nothing to mislead and no one was actually misled, nevertheless, she was held estopped upon the theory that she was dealing with an instrumentality of public concern and that public policy requires that a person dealing with such an instrumentality should be estopped from asserting that an obligation, apparently binding upon its face, given to a bank, was by collateral agreement between the parties not to be enforced.

Hence, in the instant case it appears that the fact that neither defendant nor plaintiff desired or attempted to conceal anything or to mislead any one or that any one, including the banking authorities, was misled is beside the question. To be sure, here the collateral agreement was not that the instrument should not be enforced, but it was nevertheless an agreement that it should not be enforced unless and until a certain contingency should occur. Indeed, it is difficult to see how the depositors could be injured. The defendant's note and his securities were to remain deposited with the bank until its capital and surplus should again attain unimpaired values and were not to be returned to the defendant until such time; and likewise the obligation was not to be enforced unless and until, such object not having been attained, the bank should go into liquidation. Nevertheless, the fact remains that the defendant's securities and note remained an apparent asset of the bank, although not in fact a true asset, with the possibility of deterioration in values over a period of time and change in financial responsibility of the defendant as maker of the note.

I am constrained to the conclusion that the decision of the Court of Appeals in the case of *Mount Vernon Trust Co.* v. *Bergoff* (*supra*) controls the present case. This is in spite of the fact that the decision of that court in *Higgins* v. *Ridgway* (*supra*) was apparently the court's exposition of the law at the time of the transaction here concerned, and upon which the parties had a right to rely in consummating that transaction. We are not here dealing with statutory law. Had there been in existence when the transaction was consummated a statutory enactment permitting it, a subsequent statutory enactment forbidding it would not have destroyed the validity of a contract entered into under the former statute. Here, however, we are concerned with the rule of *stare decisis*. The fact that the Court of Appeals in the *Mount Vernon Trust Company* case in effect overruled the prior *Higgins* case does not result in a legal change in the substantive law, although the practical effect may be the same. As was pointed out by Chief Judge CARDOZO in his address to the New York State Bar Association in 1932 (Report of New York State Bar Association, vol. XL [1932], p. 263, at p. 294), there usually arises a necessity for adjustments which should sometimes call for the continuance of an existing rule of law after its intrinsic error has declared itself because of the possible hardship to the innocent who have shaped their conduct by it, and that he found himself more and more in agreement with the practice proposed by Prof. Wigmore that the court should apply the outworn rule to the case then before it, accompanying it with the declaration that they would feel free to apply the new rule to transactions thereafter consummated.

However, that is not the law of this State.   On the contrary, a judicial decision is merely evidence of the law and is not the law itself. When such a decision is overruled, it does not become bad law; it never was the law and the overruled decision is regarded as if it never had existed and the reconsidered or new decision is regarded as the law from the beginning.   Consequently it is obvious that an overruled decision operates retroactively.   (*People ex rel. Rice* v. *Graves*, 242 App. Div. 128; affd., 270 N. Y. 498.)

It follows, therefore, that the law as expounded by the Court of Appeals in *Mount Vernon Trust Co.* v. *Bergoff* (*supra*) is now the law and was the law at the time of the transaction with which the court is here concerned; and that law is clearly stated to be that public policy requires that a person who, for the accommodation of a bank, executes and delivers to that bank an instrument which is in form a binding obligation, is thereafter estopped from asserting that the parties to that obligation had collaterally agreed that it should not be enforced according to its terms.

Applied to the case at bar, it follows that the defense interposed is not a good defense and that the plaintiff bank is entitled to judgment.