**LA SALLE CO. v. KANE (HARRIS et al., Third-Party Defendants).**

Civil Action No. 8916.

United States District Court
E. D. New York.

Feb. 4, 1949.

Gifford, Woody, Carter & Hays, of New York City (Donald C. Hays and Raymond M. White, both of New York City, of counsel), for plaintiff and third-party defendants.

Morrison & Peirez, of Woodside, N. Y., for defendant and third-party plaintiff.

BYERS, District Judge.

These are three motions argued January 19, 1949, of which disposition can be made in one decision:

1. For summary judgment (Federal Rules of Civil Procedure, rule 56, 28 U.S.C.A.).

2. To vacate ex parte order joining third party defendants.

3. To vacate defendant's notice of taking deposition before trial of the plaintiff (namely, Thomas S. Harris, its president).

The motion papers reveal the following situation, which must be understood

with some completeness if the motions are to be fairly dealt with:

The complaint contains five counts, the first three of which allege that the defendant executed and delivered to the plaintiff as many promissory notes, of which copies are set forth, on August 6, 1947, two, for $2500.00 and $1000.00, respectively, and on the following day, one for $16500.00, all payable in 30 days at room 1600, 115 Broadway, New York, and each contains the words "value received", and each is signed by I. Kane, as maker. The signing thereof by defendant is not in issue.

The fourth and fifth counts allege that defendant owes plaintiff $500.00 for money lent by plaintiff to defendant on November 3, 1947, and a like amount for money similarly lent on December 12, 1947. Judgment is demanded for $21,000.00 with interest appropriately computed.

The answer, as finally amended by motion which was not opposed on January 19, 1949, contains 60 paragraphs, which comprise, in addition to denials:

First      Separate and distinct defense
Second      "      "      "      "
Third      "      "      "      "
Fourth      "      "      "      "      and
          First counterclaim against plaintiff, and Thomas Stewart Harris and Cleervue Television Corporation (i. e. paragraphs 9 to 41, inclusive—32 in all).
Second    counterclaim against Harris and Cleervue, the third party defendants (5 paragraphs)
Third    counterclaim against Cleervue (7 paragraphs)
Fourth    counterclaim against Cleervue (5 paragraphs)
Fifth    crossclaim against Harris (2 paragraphs)

All these, in opposition to the simple claim for relief stated in the complaint, are said to be justified to avoid circuity of action.

The amended answer denies knowledge, etc., as to whether plaintiff is a Delaware corporation (see par. 1), which is insufficient, standing alone, to present an issue as to jurisdiction; also that the defendant (same par.) is a resident of the State of New York. His asserted lack of knowledge or information on that subject is not calculated to inspire confidence in his pleading, or to suggest familiarity on the part of his attorneys with Rule 11 of the Federal Rules. The similar denial of knowledge or information concerning paragraphs 4, 7, 10 and 12, are directed to a reallegation in each instance, of paragraph 1. How that series of negations can raise an issue, is not made to appear.

The amended answer also denies the delivery of any of the three notes declared on (but not their execution), and that the two sums of $500.00 each are owing by defendant to plaintiff.

Probably those denials, standing alone, would suffice to defeat the plaintiff's motion, if nothing more were before the Court, but that is not the case.

The situation which the elaborate pleadings seem to portray is that "at the time the promissory notes set forth in the complaint herein were made", the defendant Kane was president and principal stockholder of the Viewtone Television and Radio Corporation, a corporation of New York; that the notes were made pursuant to an agreement between defendant Kane, "as an accommodation party for" Viewtone, Harris, and Viewtone. That any delivery of the notes by Harris to the corporate plaintiff was without Kane's consent and in violation of the said agreement.

This allegation is unconvincing at least, in view of the language of the notes which were payable in terms to the plaintiff corporation.

It is next asserted that, subsequent to the agreement, a new arrangement followed, by which Kane agreed to abandon his interests in the Viewtone Corporation and to enter into an agreement with Harris to organize a new corporation (Cleervue Television Corporation), and that Harris "agreed to look to the Viewtone Television & Radio Corporation for payment of the promissory notes set forth in the complaint, and to release the de-

fendant Kane from personal liability on account of said notes".

This means, in short, that Harris agreed that the payee of the notes would not collect them from the maker. Since the payee was the plaintiff corporation and Harris was an individual, the averment is lacking in any allegation of corporate agreement not to collect the notes.

Moreover its consistency with the denial of delivery, to which reference has been made, is obscure.

These matters are set forth in the second and third defenses, which have been related in this order as tending perhaps to explain the first defense as pleaded, which is that the said notes are void for "want of any consideration".

It now becomes necessary to be specific about the agreement thus far referred to in the amended answer without stating whether it was verbal or written. The affidavit in support of the motion for summary judgment is by Thomas S. Harris, being the individual named in the amended answer. To the affidavit there is annexed what purports to be a copy of a written agreement dated August 7, 1947, between Viewtone Television & Radio Corporation, Irving Kane, residing at 666 East 93rd Street, Brooklyn, and Harris.

Attached to that affidavit are photostatic copies of 5 corporate checks of the plaintiff, payable to and endorsed by the defendant Kane, for $16500.00, $2500.00 and $1000.00 for which the notes were given, and two for $500.00 each, being the amount of each loan referred to in counts fourth and fifth of the complaint.

In the affidavit, Harris asserts that there was no agreement with respect to the notes and advances, other than the written one.

There is no affidavit of the defendant Kane, to the contrary, and the agreement therefore must be consulted in connection with the allegations of the amended answer which purport to describe its terms and conditions:

The agreement recites the business of Viewtone—manufacturing television and radio receiving sets—and Kane's ownership of 197,000 shares of a total outstanding issue of 279,000 (par value $1.00).

That Harris agrees to organize a corporation to assume performance of this contract, which will issue to Viewtone 40% of its stock in exchange for Viewtone's equipment, machines, machine tools, etc.

In paragraph 5, Viewtone represents that its liabilities to others than Kane do not exceed $60,000.00, and then occurs the following: "Harris agrees, upon the signing of this agreement, to lend to Kane a sum, which, when added to loans already made by Harris or his associates to Kane in contemplation of the signing of this agreement, will aggregate the sum of $20,000.00 for which amount Kane agrees simultaneously to execute and deliver to Harris Kane's personal promissory note payable thirty (30) days from the date of this agreement. Kane agrees to use said funds only for the purpose of purchasing obligations of Viewtone."

The contract contains provisions touching the value of the Viewtone inventory which is to be delivered to the new corporation on consignment, the part to be purchased by the latter and the price and terms of payment; and for approval by the directors and stockholders of Viewtone, and for closing or consummating the agreement within a specified time. Upon closing, Kane agrees to deliver to Harris the balance of any of the $20,000.00 remaining unappropriated to the purchase of Viewtone obligations, which is then to be applied by Viewtone on account of its liabilities. Also Viewtone agrees to repay said $20,000.00 so loaned by Harris to Kane and assigns to the former, receivables to that extent to secure its said undertaking. "Upon payment of said sum by Viewtone, Kane shall surrender to Viewtone any claims against Viewtone purchased by Kane with the moneys loaned by Harris or associates to Kane."

The later paragraphs have no present bearing except:

"14. In the event that this agreement is not fully consummated, then Kane shall *remain* personally liable for the moneys advanced to him under paragraph '5' hereof." (Italics supplied)

"16. This agreement shall be construed as one complete agreement, and neither

Harris nor the Corporation shall be obligated hereunder unless and until Viewtone and Kane duly perform all the terms, conditions, warranties and representations to be performed by them or either of them hereunder."

Since this is the undisputed contract of the parties referred to in so much of the amended answer as has been examined thus far, it is to be observed:

The $20,000.00 note contracted for in paragraph 5 was actually replaced by three of that total sum, which Kane agreed simultaneously to execute and deliver. Therefore the denial of delivery, contained in paragraph 2 of the amended answer, is contradicted by the contract which the defendant pleads; sight has not been lost of the corporate character of the payee named in the notes, as distinguished from the personal contract made by Harris, but this is an unsubstantial difference (1) because the execution of the notes is admitted in defendant's pleading, the *delivery* alone being denied, and (2) the contract in terms (par. 17) shall be "binding upon and inure to the benefit of the parties hereto and their respective heirs, executors, successors and assigns."

The allegation in paragraph 5 of the amended answer, referring to the notes and their having been made pursuant to the said agreement by Kane "as an accommodation party for the said Viewtone", is incompatible with the matter quoted from paragraph 14, which says that Kane shall *remain*, not *become* personally liable for the moneys advanced under paragraph 5.

In this connection, it is significant to observe that the defendant's pleading does not incorporate the said contract but states that reference thereto will be made at the trial.

To recapitulate: The denials, the first defense (lack of consideration; see as to par. 17 *infra*), the second defense (that Kane was an accommodation maker, and delivery of the notes by Harris to plaintiff was without knowledge, authority or consent of Kane, in spite of their being payable in terms to plaintiff, and that all plaintiff's checks bear his endorsement), and the third defense (that Harris agreed to look to Viewtone for payment and to release Kane therefrom) are contradicted by the terms of the contract relied upon by the defendant.

If he had filed an affidavit denying the contract as set forth in the Harris affidavit, the issue could not of course be resolved on this motion; since he has not done so, his amended answer, so far as the denials and these affirmative defenses are concerned, presents no substantial issue of fact, but appears to have been interposed solely for the purpose of delay.

The so-called fourth defense and first counterclaim (paragraphs 9-41, inc.) against the La Salle Company, Harris and Cleervue, with the exception to be noted, deals with an entirely new and later state of alleged facts apparently relied upon as the basis for bringing in the third party defendants, Harris and the Cleervue Corporation.

The apparent exception is perhaps not such, and if present at all, it is only by implication, namely, that the said notes were not delivered.

If that exception, either as a defense or a counterclaim, is present by implication, it does not state any defense or counterclaim against the plaintiff, for reasons heretofore discussed as to the first three alleged defenses.

This division of the amended answer will be considered only as it purports to set forth what is mistakenly called a counterclaim against Harris and Cleervue. What is probably intended is a cross-claim for relief against them (Rule 13(g) ).

Incidentally, paragraph 17 alleges in reference to the contract which has been discussed above: "17. That thereafter (Aug. 6, 1947) Harris advanced to Kane additional sums of money to make up the said sum of $200,000.00 (Sic—obviously $20,-000.00 is meant) with checks of The La Salle Company (this plaintiff) for the use by 'Viewtone'." That allegation pretty well disposes of paragraph 4 of the same pleading, which avers that the notes set forth in the *complaint are void for want of consideration.*

Moreover, the references to the said contract contained in paragraphs 16 to 19,

inclusive, establish, if that were necessary, that the contract relied upon by Kane is in fact the one attached to Harris' affidavit on this motion for summary judgment.

In paragraph 20, it is alleged that Harris cancelled that agreement, which incidentally he could have done only (par. 9, end) "In the event that at the closing date hereunder there shall be pending or threatened any litigation which affects or may affect this agreement".

It is not alleged that such cancellation occurred prior to the execution and delivery of the notes, or the endorsement of the said checks by Kane.

Paragraphs 21 to 41, inclusive, purport to allege a new agreement entered into "thereafter". No copy is attached nor is a date given. In outline, it is said to have provided for a new corporation to be formed —The Cleervue Corporation—(to) purchase the assets of Viewtone, Harris to purchase 60% of the capital stock ($1.00 par) and Kane 32%, the balance to be sold to others; that Kane was to become president, and Harris a director, and they two were to "set the policies" of the corporation.

That such a corporation was formed under Delaware laws, and is still doing business; that Kane resigned as president of Viewtone, relying upon the agreement, and abandoned any further efforts to salvage or promote his interests in Viewtone, which later became an involuntary bankrupt, causing Kane's stock therein to become worthless. That Harris, acting for Cleervue, purchased a substantial portion of the Viewtone assets at the bankruptcy sale.

That Kane "entered upon the performance of his duties as president of Cleervue and was represented to the public as such".

That Kane was instrumental in procuring orders for radio and television sets for Cleervue to the extent of $1,000,000.00.

Breach of this last alleged agreement is asserted in that (a) Harris and Cleervue refused to authorize the issuance to Kane of 32% of Cleervue stock. (He does not assert that he offered to purchase it.) And (b) they refused to elect him as president,

and refused to permit him to perform his duties for and on behalf of Cleervue, and notified "Kane and the trade that Kane was no longer associated with Cleervue".

That the representations and statements to Kane were false and made to induce him to sever his connections with Viewtone and for the purpose of capitalizing upon Kane's standing and reputation in the field of radio and television; that Kane's efforts have enabled Cleervue to establish contacts with suppliers, dealers and retailers. That Kane has been deprived of an opportunity to establish himself with others, or independently, in this field. That he relied upon said representations, and has assisted Harris in organizing Cleervue and in promoting and establishing Cleervue, "all to the damage of Kane in the sum of $500,000.00".

The second so-called counterclaim against Harris and Cleervue repeats the foregoing by reference:

Paragraph 43 reads: "That the defendant and third party plaintiff Kane is, therefore, entitled to the issuance of 32% of the capital stock of Cleervue."

The following paragraphs aver that the stock cannot be bought on the market; due performance of every condition of the contract, except as prevented by Harris and Cleervue, by Kane; that he has no adequate remedy at law.

The third so-called counterclaim against Cleervue is for salary and 8⅓% of the net sales, said to be a part of the same agreement, amounting in all (on the basis of 8⅓% of $1,000,000.00 of sales) to $91,-666.66.

The fourth alleged counterclaim against Cleervue is for the reasonable value of his services in procuring orders for the approximate amount of $1,000,000.00, the claim being in the sum of $75,000.00.

The fifth cross-claim is against Harris. It alleges that, if plaintiff recovers judgment upon the causes alleged in the complaint, "such will have been brought about by the delivery of [by] Harris of the notes to the plaintiff in violation of an agreement made between Kane and Harris, and for which breach of agreement Harris is liable to Kane".

This brief outline of the pleadings sufficiently depicts the background of the controversies sought to be the subject of one adjudication, to reveal the questions presented by these three motions.

It will be convenient to consider, at the outset, the second one listed, namely, the effort to vacate the ex parte order joining Harris and Cleervue as third party defendants, and the subordinate objects listed in the notice of motion.

■ It would be proper, under Rule 14, for Kane to serve a summons and complaint upon Harris and Cleervue if either "is or may be liable to Kane for all or part of" the notes or loans declared on by La Salle. Those are assertions of indebtedness on the part of Kane; if Harris or Cleervue is liable to La Salle for those debts or any part of them, the joinder is permissible under the rules, otherwise not.

The matters involved are pleaded, as has been seen, as the first, second, and third counterclaims against Harris and Cleervue, although the first is coupled with the fourth alleged defense against the plaintiff. It has been explained that this is a mere label, and does not affect the verbal constituency of the pleading. There is thus sought to be introduced an entirely separate alleged transaction, described as an agreement entered into at an undisclosed time called "thereafter", and its purported contents have been stated. They have nothing to do with the loans said to have been made by La Salle to Kane, but refer to the alleged hiring by Cleervue of Kane to render services to Cleervue.

The defendant relies upon the assertion that a "single group or aggregate of operative facts" is here revealed, which justifies this attempt to avoid circuity of action.

The case relied upon by defendant, United States v. Pryor et al., D.C., 2 F. R.D. 382, indicates the difference between the circumstances creating a primary liability (i.e., warranty of fitness of a heating apparatus and note given to secure the purchase price, later acquired by plaintiff under National Housing Act, 12 U.S.C.A. § 1701 et seq.), and this case. The third party defendant retained in that case was the original contractor, and if his breach of contract could be proved, the consideration for the defendant's note would fail.

Here, however, the loan made to Kane, to enable him to keep the financially unstable Viewtone Corporation afloat, was one thing; the alleged employment by Cleervue was quite another.

It is the difference between a serial story, and the sequel to a prior narrative complete in itself, but involving some of the characters of the earlier tale.

■ The alleged counterclaims first to fourth, inclusive, of the third party complaint are legally insufficient, and should be stricken.

The fifth alleged counterclaim, against Harris, presents but a repetition of matters heretofore discussed in connection with the defenses.

■ The change of garb does not repair the essential futility of pleading a state of alleged facts that is contradicted by the very terms of the written document (the contract of August 7, 1947) relied upon to demonstrate the claim for relief.

This cross-claim should be dismissed for the reason that the amended answer demonstrates its falsity. To be sure, it asserts a claim against Harris, sought to be joined for that purpose, "arising out of the transaction or occurrence that is the subject-matter either of the original action * * *" (Rule 13(g) ), but the mere assertion does not conclude the plaintiff, since it is based upon a showing that is palpably false according to the very pleading in which it is embedded. Nor does the defendant cite authority to the contrary.

The plaintiff's motion to strike the third party complaint should be granted. This renders it unnecessary to discuss the subordinate purposes of this motion.

Turning now to the motion for summary judgment, which is to be decided upon the complaint, the amended answer exclusive of paragraphs 9 to 60, inclusive, and the uncontroverted affidavit of Thomas S. Harris, verified July 29, 1948, it will be seen that the denials and the first, second and third defenses present a complete and undisputed factual situation, which it has been the effort to portray.

The admonition uttered with respect to the granting of summary judgments, contained in Doehler Metal Furniture Co. v. United States, 2 Cir., 149 F.2d 130, 137, has been weighed, as the defendant urges it should be. The Court says in quoting: " * * * especially where, as here, damages are in question, the courts should go slow about making haste by a summary judgment"; earlier in the opinion it is said: "A litigant has a right to a trial where there is the slightest doubt as to the facts, and a denial of that right is reviewable; but refusal to grant a summary judgment is not reviewable."

A closer citation to the present situation would be found in Boro Hall Corporation v. General Motors Corporation, 2 Cir., 164 F.2d 770, where a triable issue was said to be present in pleadings thought by the reviewing court to involve the meaning of a written contract, as to which it was held that evidence should be received in aid of interpretation.

■■ Probably it is unnecessary to repeat that, if only the denials, and defenses of lack of consideration, lack of delivery, and release of Kane from personal liability were before the Court, the motion would have to be denied, and indeed would probably never have been made. But when those assertions are relied upon solely because of the terms of a written contract, which may be deemed to have been pleaded, it becomes the duty of the Court to examine the latter to determine whether it says, in legal effect, what the defendant asserts concerning it (Cf. Banque Franco-Americaine v. Bergstrom, 171 App.Div. 870, 157 N.Y.S. 635). In other words, to ascertain whether there is "the slightest doubt as to the facts" (Doehler Metal Furniture Co. v. United States, supra).

I cannot find any suggestion that the defendant proposes to offer evidence tending to interpret the terms of this written contract which is quite free from ambiguity; of course he could not thereby alter its terms, Higgs v. De Maziroff, 263 N.Y. 473, 189 N.E. 555, 92 A.L.R. 807; in other words, I fail to perceive how the case of Boro Hall Corporation v. General Motors

Corporation, supra, affords any sustenance to the defendant's opposition to this motion.

The cases cited for him are clearly not in point:

Federal Reserve Bank of New York v. Palm et al., 2 Cir., 79 F.2d 539, involved a contested question of whether delivery of a notice of protest had been made to a certain bank as agent for the defendant indorser. That was a question which was of the essence of defendant's liability.

Gramercy Finance Corporation v. Greenberg, 127 Misc. 897, 217 N.Y.S. 224: There an alleged agreement between the original parties to a note, not to hold the defendant an accommodation maker, was denied, thus raising an issue to be tried.

Here the agreement upon which defendant relies is before the Court by common consent, and speaks for itself, but not to the effect asserted by defendant.

McAdam v. Wholesale Dry Cleaning & Dyeing Works, Inc., 232 App.Div. 30, 248 N.Y.S. 613, is similarly to be distinguished.

Berson Sydeman Co. v. Waumbeck Mfg. Co., 212 App.Div. 422, 208 N.Y.S. 716: There a breach of warranty was properly pleaded by the maker of a trade acceptance. Naturally the court overruled an order granting plaintiff's motion in part for summary judgment, since it appeared that the court below had misinterpreted the scope of the defense.

Du Bosque v. Monroe, 168 App.Div. 821, 154 N.Y.S. 462: Judgment on the pleadings was vacated in a case in which defendant tendered the issue of lack of consideration for a non-negotiable note, in a separate defense. If that were all that is before this court, the motion would have to be denied, but it is not.

Grannis v. Stevens, 1916, 216 N.Y. 583, 111 N.E. 263: In this case both sides moved for a directed verdict, and the court's decision was upheld. Manifestly the case is of no help in this connection.

Rubel v. Honig, 178 App.Div. 53, 164 N.Y.S. 219: A non-negotiable note was in suit between the parties. A directed verdict was set aside because the defendant had not been permitted to show whether inter-

632

est payments were on the note or on something else. Why the case was cited is not clear. This last remark applies also to Lawrence-Cedarhurst Bank, Inc., v. Ruth, 162 Misc. 82, 294 N.Y.S. 810.

 A careful examination of the pleadings, and the contract upon which defendant relies, fails to develop even the "slightest doubt", so far as this Court is concerned, that Kane has failed to plead any facts which tend to show that he did not execute and deliver these notes to plaintiff as alleged in the complaint, having received the face amounts thereof for application to the debts of Viewtone Corporation; or that the plaintiff agreed to release him as maker. It results, therefore, that the plaintiff's motion, for summary judgment for the relief demanded in the complaint, must be granted.

The necessary effect of this decision is to grant the plaintiff's third motion to vacate the defendant's notice of the taking of the plaintiff's deposition.

Settle order.