**UNIVERSAL FIBERGLASS CORP., Henry J. Rand, III, George H. Bookbinder, and James R. Matthews, Appellants,**

v.

**UNITED STATES of America, Appellee.**

**No. 19054.**

United States Court of Appeals Eighth Circuit.

Sept. 25, 1968.

---

Roger A. Peterson, of Helgesen, Peterson, Engberg & Spector, Minneapolis, Minn., for appellant and filed brief.

Carl Eardley, Atty., Dept. of Justice, Washington, D. C., for appellee; Edwin L. Weisl, Jr., Asst. Atty. Gen., and Alan S. Rosenthal and Howard J. Kashner, Attys., Dept. of Justice, Washington, D. C., and Patrick J. Foley, U. S. Atty., Minneapolis, Minn., were with Carl Eardley, Washington, D. C., on the brief.

Before VAN OOSTERHOUT, Chief Judge, BLACKMUN, Circuit Judge, and VAN PELT, District Judge.

VAN PELT, District Judge.

This is an action for declaratory judgment as to the provisions of a contract between the United States of America and the defendant, Universal Fiberglass Corp. Adopting the terminology of counsel in their respective briefs, this defendant will hereafter be referred to as UFC. Also named as defendants are Henry J. Rand, III, and George H. Bookbinder, who are president and vice-president, respectively, of UFC, and James R. Matthews, who was office manager and corporate bookkeeper and accountant for UFC. The complaint also asks for an injunction which would restrain the defendants and others from preventing the Administrator of the General Services Administration (GSA) from examining UFC's books and records.

The case grows out of a written contract awarded UFC, on January 27, 1965, by GSA for the production of 12,714 three-wheel mail delivery trucks at a

contract price totalling $13,298,844. The unit price was $1046. Four amendments were made to this contract, the last of which increased the unit price of the vehicles to $1156.

Under the original contract, deliveries at the rate of 75 units per day were to be made commencing not later than July 27, 1965. By amendment the number of the units to be delivered daily was reduced for a stated period. There is a dispute as to the exact number of vehicles manufactured and tendered by UFC. Probably it was not less than 3271 and not more than 4222. GSA made progress payments to UFC totalling $5,454,424. Thus UFC drew approximately 41% of the contract price and produced between one-fourth and one-third of the units contracted.

As matters proceeded, a new pilot model was submitted by UFC under amendment 4 of the contract, and approved. In this interval a fire occurred in the UFC plant and the delivery schedule to be submitted was not furnished. During this time an audit was conducted by the Government which resulted in its questioning UFC's ability to complete the contract. On November 1, 1966 the Government requested that within two weeks UFC furnish detailed arrangements for completion of the contract stating that UFC had been overpaid. Further correspondence ensued, the details of which are not important here, with the result that on December 2, 1966 the Government terminated the contract for failure to make delivery and for failure to make progress. UFC denied its default and appealed to GSA's Board of Contract Appeals where at the time of the oral argument the matter was still pending.

This action was begun in January, 1967, after requests for inspection of UFC's books and records were denied. Thereafter, plaintiff's motion for a summary judgment and supporting affidavits were filed. After the suit was filed UFC granted the government a limited right of access to invoices, purchase orders, receiving reports, stock record cards and time cards. The Government claims that it needs the access requested in this suit

1) to defend itself on defendant UFC's appeal to GSA's Board of Contract Appeals;

2) to identify and value the inventory vested in it under the contract;

3) to ascertain the type and extent of any claims it might have against UFC;

4) to determine the amount of unliquidated progress payments.

The trial court granted plaintiff's motion for summary judgment and defendants have appealed.

The errors assigned relate to

1) the right of the district court to enter its order pending the appeal to the Board of Contract Appeals;

2) whether the contract gives the Government the right of access to UFC's books and records;

3) whether there was a material issue of fact that could not be resolved on a motion for summary judgment.

■ We consider the last claim first because we agree that summary judgment is not to be granted if there is a material issue of fact to be decided. See Ramsouer v. Midland Valley R. Co., 135 F.2d 101 (8 Cir. 1943). We also agree that UFC did not in its affidavits present to the trial court the claimed matters on which it now relies. Nevertheless, the trial court's ruling is correct. The issues which appellants present in their assignments of error have to do with the language of the contract, the construction of such language, and what the contract means or entails.

■■ What is meant by "final payment under this contract", by "pertinent", by "reasonable opportunity", by "total profits realized", by "plans, drawings, information, and contract rights (hereinafter called 'manufacturing materials')," by "administration" as they apply to the right of plaintiff hereafter discussed, to examine defendants' books and records, does not raise an issue of

fact as such. All contracts are subject to interpretation by the courts. If we adopted appellants' argument, summary judgment could never be granted in contract actions because arguably some term in every contract is subject to interpretation. Declaratory judgment cases in which summary judgment has been granted although the parties were not in agreement as to the meaning of the contract or its interpretation, are: Motor Terminals v. National Car Co., 92 F. Supp. 155 (D.Del.1949), aff'd 182 F.2d 732 (3 Cir.); Keele v. Union Pacific R. Co., 78 F.Supp. 678 (S.D.Calif.1948); Northland Greyhound Lines v. Amalgamated Ass'n, etc., 66 F.Supp. 431 (D.Minn.1946).

■ One further comment may be material. After the Government examines the books and records, and assuming a suit is brought for the excess payments, if any, defendants will still be able to make a showing as to their "total profits realized." We are concerned here only with the right to inspect records and other material not with whether a recovery could be made against defendants under the terms of the contract or the amount of a recovery. We conclude that matters relating to the right to inspection of books and records can be raised in a suit for declaratory judgment and determined on a motion for summary judgment.

■ With reference to the right of the district court to entertain this suit pending the appeal before the Board of Contract Appeals, the argument of appellants is in substance that the Government should exhaust its administrative remedies before bringing this action.

Appellant UFC lodged the appeal with the Board of Appeals. It relates to the termination of the contract. The Board's decision would not decide other matters under the contract. The hearing will be limited only to questions "necessary for the complete adjudication of the issues" raised by the defendant UFC in its appeal. See 41 Code of Federal Regulations, 5–60.205 (1967 rev.).

The Government's need for the books and records and other documents goes beyond the question of proper termination. It includes determining the unliquidated progress payments, if any, the inventory to which it may be entitled, and its value.

The appeal before the Board of Contract Appeals is so limited that even if access to some books and records was available in that action it would not serve the purpose of this case. No good reason exists for enabling defendant UFC by an appeal to prevent an audit being made of its books and records.

The chief and final assignment relates to the right of access by the Government to UFC's books and records.

Appellants apparently concede the right to identify and value the inventory by claiming that they have offered to allow examination of the books necessary for that purpose.

The trial court relied upon five clauses in the contract and amendments in reaching its decision. It is not necessary that we affirm on all five. If any one or two clauses of the contract or amendments justify the court's order, we should affirm. Amendment number 2 provides in paragraphs 4 and 5 in substance for a payment to the Government, if 75 acceptable vehicles are not furnished each day, of $1.50 for each vehicle day and for a cumulative credit when more than 75 vehicles are furnished daily. Paragraph 6 contains a limitation on the payments under paragraphs 4 and 5 which "shall be not more than the total profits realized by the contractor" in performing the contract.

■ Paragraph 7 then reads:

"7. The determination of what constitutes costs incurred in performance of said contract, the determination of the reasonableness of such costs, and the determination respecting the allocation of such costs to such contract, for the purpose of determining profit pursuant to paragraph 6, above, shall all be determined pursuant to the contract cost principles set forth

in FPR Subpart 1–15 by an audit performed by the Government, and the contractor agrees to make all of its accounts, books, records and other appropriate documents available to the Government for the purposes of such audit."

The trial court correctly held that this paragraph authorizes access to all of UFC's accounts, books, records and other appropriate documents.

The contract also included an audit-price adjustment clause in Amendment 4. It reads:

"a. This clause shall become operative only with respect to any change or other modification made pursuant to one or more provisions of this contract which involves a price adjustment in excess of $100,000 that is not based on adequate price competition, established catalog or market prices of commercial items sold in substantial quantities to the general public, or prices set by law or regulation.

"b. For purposes of verifying that cost or pricing data submitted in conjunction with a contract change or other modification involving an amount in excess of $100,000 are accurate, complete, and current, the Contracting Officer, the Comptroller General of the United States, or any authorized representative, shall, until the expiration of three years from the date of final payment under this contract, have the right to examine those books, records, documents and other supporting data which will permit adequate evaluation of the cost or pricing data submitted, along with the computations and projections used therein, which were available to the Contractor as of the date of execution of his Contractor's Certificate of Current Cost or Pricing Data."

Amendment 4 made some substantial changes in the vehicles to be produced which would result in an adjustment of the price in excess of $100,000. Thus the audit-price adjustments paragraph has meaning in this case.

 Appellants in a sense recognize this because they do not contend that the right to examine is not granted by this section. They say that the right is open for three years from the date of the final payment and since final payment has not been made that the right claimed under this paragraph has not begun to run. This is too restrictive a reading of the clause. The cost or pricing data could be examined at any time up to three years from the date of final payment. Without the examination, the amount of the final payment could be difficult, if not impossible, to determine. We believe this clause also gives the right to examine the books and records.

It is unnecessary to examine the other contractual provisions relied upon by the trial court. The contract as amended contained ample provision for the court's order, and it is affirmed.