Gary D. JACKSON, Plaintiff-Appellant,

v.

P. J. GRIFFITH et al., Defendants-Appellees.

No. 71-1277.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted April 11, 1973.

Decided June 14, 1973.

Michael Lerner, Kansas City, Kan. (Robert H. Waters, Kansas City, Kan., on the brief), for plaintiff-appellant.

Edward G. Collister, Jr., Sp. Asst. Atty. Gen., State of Kan. (Vern Miller, Atty. Gen., State of Kan., on the brief), for defendants-appellees.

Before PHILLIPS, SETH and DOYLE, Circuit Judges.

ORIE L. PHILLIPS, Circuit Judge.

Gary Dean Jackson brought this action against the above-named State Board of Regents of the University of Kansas and E. L. Chalmers, Jr., Chancellor of the University of Kansas, hereinafter referred to collectively as the defendants. From a summary judgment in favor of the defendants and a judgment against Jackson and in favor of the defendants, Jackson has appealed.

It is alleged in the complaint that jurisdiction is based upon allegations that the action arises under 42 U.S.C.A. § 1983 et seq., and Amendments 1, 5, and 14 of the Constitution of the United States.

The complaint, which was duly verified, alleged the following facts:

That the above-named defendants, other than E. L. Chalmers, Jr., are members of the State Board of Regents of the University of Kansas, and as such make and enforce the policies and regulations of the University.

That E. L. Chalmers, Jr., is the Chancellor of the University of Kansas, and as such has general administrative authority over the policies of the operations of the University.

That Gary Dean Jackson received his A.B. degree from the University of Kansas in June 1970. He enrolled for the summer session, commencing in early June at the College of Law of the University.

Jackson received an appointment as Graduate Assistant, Department of Black Studies, for the summer session, beginning June 1, 1970, and ending July 30, 1970. In addition, he received an appointment as Assistant to the Dean of Men for Black Students for the period beginning July 1, 1970, and ending June 30, 1971. His duties under the academic appointment consisted of teaching courses in the Black Studies Department. His duties under the administrative appointment consisted of working with and relating to the black student community. At all times, Jackson fulfilled the duties incident to his academic and administrative appointments in a superior manner.

Jackson was informed that his academic appointment as an instructor in the Department of Black Studies and his position as Assistant Dean of Men for Black Students would be renewed for the 1970–1971 academic year.

On July 27, 1970, in compliance with the directive of the State Board of Regents to Chancellor E. L. Chalmers, Jr., Jackson's employment was terminated in all capacities.

On December 3, 1970, the defendants filed and served on Jackson certain requests for admissions, numbered 1 to 8, inclusive. On January 13, 1971, Jackson filed and served his answers to such requests. We set out each request and the answer thereto, as follows:

"Q. 1. You graduated from undergraduate school at the University of Kansas in the spring term of 1970 and on or about June 1, 1970, received an appointment at the University of Kansas as a graduate teaching assistant, Department of Black Studies, for the summer session beginning June 1, 1970, and ending Friday, July 31, 1970.

"A. 1. Plaintiff admits no. 1.

"Q. 2. On Monday, July 27, 1970, you were notified by officials at the University of Kansas that your employment by the University of Kansas was terminated.

"A. 2. Plaintiff cannot truthfully admit or deny request no. 2 for the reason that, his only notification was to receive, without comment, a copy of the memorandum of July 27, 1970 from Chancellor Chalmers to Vice Chancellor Keith Nitcher. Said copy was directed to Plaintiff as indicated (photocopy of memorandum attached).

[The photocopy read:

'MEMO TO: Vice Chancellor Keith Nitcher

FROM: E.L.C. /s/ E.L. Chalmers Jr.

'In compliance with the directive (attached) of the Board of Regents please terminate the employment of Mr. Gary Dean Jackson immediately.

\*    \*    \*    \*    \*    \*

'It was moved by Mr. Danenberger and seconded by Mr. Cromb that the Chancellor of the University of Kansas be directed to immediately remove Gary Dean Jackson from employment.']

"Q. 3. You know that the act of terminating your employment was taken due to the fact that during the turmoil in Lawrence, Kansas, in July of 1970 you, on July 17, the day after Rick Dowdell's shooting death, purchased approximately 27 boxes of ammunition and took them back to Lawrence, Kansas, to be dispersed among various individuals.

"A. 3. Plaintiff denies request no. 3.

"Q. 4. When your employment as a graduate teaching assistant, Department of Black Studies, was terminated on Monday, July 27, 1970, you had five days remaining on your summer school teaching contract.

"A. 4. Plaintiff admits request no. 4.

"Q. 5. You were notified that on or about September 18, 1970, that the Kansas State Board of Regents met at Topeka, Kansas and determined that you should be reinstated in your position as a graduate teaching assistant, Department of Black Studies, for the remainder of your contract which was from Monday, July 27, 1970, through Friday July 21, [sic] 1970, and further directed that you be paid for the remaining five days on your teaching contract in the amount of $42.90.

"A. 5. Plaintiff denies request no. 5.

"Q. 6. You were paid $42.90 after being reinstated for the remaining five days on your summer school teaching contract.

"A. 6. Plaintiff denies request no. 6.

"Q. 7. That attached hereto as Exhibit 'A' is a copy of the state

warrant issued to you in the amount of $42.90 covering wages due for the five day period from July 27 through July 31, 1970, upon your contract as a graduate teaching assistant, Department of Black Studies.

"A. 7. Plaintiff cannot truthfully admit or deny defendant's request no. 7 for the following reasons:

Plaintiff never saw the actual warrant referred to as Exhibit 'A'. On November 5, 1970, he was advised that a deposit in the amount of Forty-two Dollars and Ninety Cents ($42.90) had been credited to his account at the Capital Federal Savings and Loan Assn. The source or reason for the deposit was not made known to the plaintiff, by Capital Federal or anyone else.

"Q. 8. That you have been fully paid for your services as a graduate teaching assistant, Department of Black Studies.

"A. 8. Plaintiff cannot truthfully admit or deny request no. 8 in view of the information available to him as indicated in his response to request nos. 6 and 7."

On July 30, 1970, Jackson made a written request to the State Board of Regents and Chancellor E. L. Chalmers, Jr., that he be given:

"a. an enumeration of the charges on which the termination was based;

"b. a hearing before the Board of Regents on these charges with the opportunity to be heard and to present evidence;

"c. a review of the prior decision to terminate based upon the hearing results;

"d. an answer to the request of August 5, 1970 setting out charges and a hearing date."

Up to October 26, 1970, the date of the filing of the complaint, Jackson's request, as outlined in the communication of July 30, 1970, to the defendants, had gone unanswered.

At all times during his employment, both in his capacity as Assistant Dean of Men and as instructor in the Black Studies Department, Jackson was active in black student organizations, and in his capacity as instructor in the Black Studies Program, he was active in the development of a black studies curriculum.

In his complaint, Jackson alleged that the reason for the decision to terminate his employment under his academic and administrative appointments, and not to offer him an academic or administrative appointment for 1970–1971 was to retaliate against him for his expressions of opinion, in the exercise of his freedom guaranteed by the First and Fourteenth Amendments of the Constitution of the United States;

That the decision was not made under ascertainable and definite standards governing the defendants in making such decision;

That the decision had caused and would cause damage to Jackson's professional reputation and standing;

That Jackson's rights under the First, Fifth and Fourteenth Amendments to the Constitution of the United States had been violated by:

1. The defendants' decision not to reemploy Jackson;

2. By failure of the defendants to provide a hearing as to the merits of the decision, with the opportunity to be heard and to present evidence thereon;

3. By failure of the defendants to provide an enumeration of the charges on which the termination was based;

4. By defendants' failure to make such a decision under ascertainable and definite standards.

Jackson stated in the complaint that he suffered irreparable injury and was threatened with irreparable harm in the

future by reason of the acts complained of.

On November 30, 1970, defendants filed a motion to dismiss the complaint on the ground of failure to state facts upon which any relief could be granted, and filed in support thereof a memorandum signed by Ray L. Borth, Assistant Attorney General, State of Kansas, which in part read:

"At page 4 of plaintiff's complaint, he states that the reason for the decision to terminate his employment under his academic and administrative appointments and not to offer him said academic and administrative appointments for 1970–71 was to retaliate against him for his expressions of opinion and the exercise of his freedom guaranteed by the first and fourteenth amendments of the United States Constitution. It is defendants' contention that plaintiff's employment was terminated because during the turmoil in Lawrence, Kansas, in July of 1970 when Rick Dowdell was shot to death, plaintiff on July 27, 1970, subsequent to such shooting, came to Topeka, Kansas, bought 27 boxes of ammunition and took them back to Lawrence, Kansas.

\*    \*    \*    \*    \*    \*

"Apparently the main thing that the plaintiff is complaining about in the case at bar is that there is no enumeration of the charges shown to him upon which his termination of employment was based and that there should have been a hearing upon these charges so that he would have had an opportunity to be heard and present evidence relative to his position. Directing the Court's attention to that subject, the defendants have filed Exhibit 'A', which is some eight pages of copies of communications between plaintiff's attorney, the Board of Regents, the Chancellor of the University of Kansas, and the Attorney General's office. \*    \*    \*"

Included in such Exhibit "A" is what purports to be a telegram from Robert H. Waters, as attorney for Jackson, to Chancellor Chalmers and the Board of Regents of the University of Kansas, which reads:

"Request that you and the Board of Regents provide the following in connection with the termination of Gary Dean Jackson, Assistant to the Dean of Men:

"(1) An enumeration of the charges on which the termination was based.

"(2) A hearing before the Board of Regents on these charges, with the opportunity to be heard and to present evidence.

"(3) A review of the prior decision to terminate based upon the hearing results.

"(4) An answer to this request by August 5, 1970, setting out charges and hearing date."

Also included in such Exhibit "A" is a letter from J. Richard Foth, Assistant Attorney General, State of Kansas, to Waters, in part reading:

"The Chancellor of the University of Kansas and the Kansas State Board of Regents have referred your telegram to this office since we serve as legal counsel for the Board of Regents. \*    \*    \*

"The action of the Board of Regents in ordering Chancellor Chalmers to dismiss Mr. Jackson was predicated upon what was thought to be an uncontroverted set of facts: That on July 17, 1970, at a time when Mr. Jackson was employed as Assistant to the Dean of Students, he traveled from Lawrence to Topeka, Kansas, and purchased twenty-seven boxes of ammunition which were subsequently returned to Lawrence and delivered to unknown individuals; that the action was taken on the day following the shooting death of Rick Dowdell and the ensuing turmoil which engulfed the community of Lawrence; that Mr. Jackson readily acknowledged that he had purchased the ammunition and delivered it to parties in Lawrence.

"Based upon the foregoing information, the Board of Regents determined that Mr. Jackson's actions evidenced a lack of maturity and responsibility on his part that was incompatible with his duties involving the counseling of students and liaison between the University of Kansas and the Lawrence community in light of the events then transpiring in Lawrence.

\* \* \* \* \* \*

"It is the position of the Board of Regents that Mr. Jackson served at the will of the Chancellor and was thus subject to dismissal for any reason that might relate to his ability to fulfill the duties imposed upon him as Assistant to the Dean of Students. Under the fact situation set out above, the Board of Regents felt that Mr. Jackson should be dismissed for the reason indicated above."

Also set out in such Exhibit "A" is what purports to be a telegram from Robert H. Waters and Michael Lerner, as attorneys for Jackson addressed to the Office of the Attorney General, Attn. J. Richard Foth, reading in part as follows:

"Our telegram of July 30, 1970 items one through four sets out fully and completely the request of the Chancellor and the Board of Regents as made by Garry Jackson. \* \* \* We reaffirm the request made in communication of July 30, 1970."

It will be recalled that in his complaint, Jackson alleged that he made a demand upon Chancellor Chalmers and the Board of Regents that he be given:

"a. an enumeration of the charges on which the termination was based;

"b. a hearing before the Board of Regents on these charges with the opportunity to be heard and to present evidence;

"c. a review of the prior decision to terminate based upon the hearing results;

"d. an answer to the request of August 5, 1970 setting out charges and a hearing date."

■ It is obvious that what Jackson requested was that the charges and the grounds for his dismissal be made in writing and furnished to him, and that he be given a hearing and an opportunity to answer such charges and to present evidence.

■ A mere recital in a letter by the Assistant Attorney General, in which much other matter was included, was not a statement of the charges made by the Board of Regents against Jackson nor a basis for a hearing on the charges made against Jackson.

Moreover, the statement in the Attorney General's letter was expressly denied by Jackson in his answer to No. 3 of the Request for Admissions, and also in the allegations of his complaint.

It is apparent that the court treated the matter, including Exhibit "A" to the memorandum of counsel for the defendants, as an affidavit, because he states in his memorandum, which precedes his decision and order, the following:

"Pursuant to Rule 12(b), Federal Rules of Civil Procedure, the court ruled on January 4, 1971 that defendants' motion to dismiss for failure to state a claim upon which relief could be granted would be treated as one for summary judgment. Plaintiff was given ten days within which to answer defendants' request for admissions and *to file opposing affidavits*. He has answered the request, but has filed no opposing affidavits." (Italics ours.)

Certainly, there is no legitimate proof in the record that Jackson admitted he purchased ammunition and delivered it to parties in Lawrence, Kansas.

Surely, Jackson is not required to try his claim for relief, duly set forth in his verified complaint, and the issues tendered thereby on the basis of unauthenticated and unverified statements in what purports to be a letter from the

defendants' attorney to Jackson's attorney.

■ It is true that Rule 56 of the Federal Rules of Civil Procedure does permit the filing of affidavits in support of a motion for summary judgment, but we do not think that authorizes the practice of filing affidavits denying the allegations of the complaint.

The pleadings must be construed liberally in favor of a party against whom a motion for summary judgment is interposed, under Rule 56 of the Federal Rules of Civil Procedure, "but the court may pierce the pleadings and determine from depositions, admissions and affidavits, if any, in the record whether material issues of fact actually exist. If, after such scrutiny, any issue as to a material fact dispositive of right or duty remains the case is not ripe for disposition by summary judgment." [1]

■ While the rule provides for the filing of affidavits, their sole purpose is to show whether any issue of material fact exists. The rule does not serve as a substitute for a trial and bona fide factual disputes may not be disposed of through the use of affidavits.[2]

Here, Jackson alleged that he was employed by the University of Kansas as Assistant to the Dean of Men for Black Students for the period beginning on July 1, 1970, and ending June 30, 1971; that on July 27, 1970, in compliance with the directive of the State Board of Regents, the following memorandum was directed to him:

"MEMO TO: Vice Chancellor Keith Nitcher

"FROM: E.L.C. /s/ E. L. Chalmers, Jr.

"In compliance with the directive (attached) of the Board of Regents

please terminate the employment of Mr. Gary Dean Jackson immediately.

"ELC:lje

"cc: Vice Chancellor Wm. Balfour
Dean George Waggoner
Mr. Max Bickford

"It was moved by Mr. Danenbarger and seconded by Mr. Cromb that the Chancellor of the University of Kansas be directed to immediately remove Gary Dean Jackson from employment."

Jackson further alleged in his complaint that during his employment as Assistant Dean of Men for Black Students he was active in black student programs, and that the reason for the termination of his employment was to retaliate against him for belonging to and taking an active interest in black student organizations, and for expressing his opinion in the exercise of the freedom guaranteed to him by the First and Fourteenth Amendments to the Constitution of the United States.

Although neither the memorandum filed by counsel for the defendants in support of their motion to dismiss, nor Exhibit "A" attached thereto, were sworn to or otherwise verified, the court referred to such Exhibit "A" and such motion as affidavits and based the facts thereon, which he found and set forth in his memorandum decision on the motion for summary judgment.

The court sustained the motion for summary judgment on the ground that Jackson's employment was terminated under the provisions of K.S.A.1972 Supp. 76–715, which was effective March 18, 1970, and which reads as follows:

"76–715. *Appointment of employees; compensation.* The chief executive officer of each university and college shall appoint such employees as

1. Machinery Center, Inc. v. Anchor National Life Ins. Co., 10 Cir., 434 F.2d 1, 6 (1970).

2. Machinery Center, Inc. v. Anchor National Life Ins. Co., 10 Cir., 434 F.2d 1,

6 (1970); Hanley v. Chrysler Motors Corporation, 10 Cir., 433 F.2d 708, 711 (1970).

are authorized by the board of regents. Employees in the unclassified service shall serve at the pleasure of the chief executive officer of the university or college, *subject to policies approved by the board of regents*. Unclassified employees shall receive such compensation as is prescribed by the chief executive officer of the university or college within authorizations by the board of regents. Employees of the universities and colleges, who are not in the unclassified service, shall be in the classified service of the Kansas civil service act. [L.1970, ch. 371, § 5; March 18.]" (Italics ours.)

Here, however, the contract provided that Jackson's employment should continue from July 1, 1970, to June 30, 1971, and the determination to terminate his employment under the contract and the order directing such termination were made by the State Board of Regents of the University of Kansas and not by the Chancellor. There is nothing in the record to show that it was the pleasure of the Chancellor to terminate Jackson's employment as Assistant Dean of Men for Black Students. Moreover, the Chancellor expressly appointed Jackson to serve as Assistant Dean for a term of one year, and did so after the above-mentioned statute was enacted. The record is bare of any explanation of why the Chancellor appointed him for a specific term. There must have been some reason for that, but such reason does not appear in the record.

Moreover, the provision in the statute that "employees in the unclassified service shall serve at the pleasure of the chief executive officer of the university or college" is expressly made "subject to policies approved by the board of regents." The record does not show whether the Board of Regents adopted any policy limiting the power of such chief executive to terminate the service of an Assistant Dean, and if so, what that policy was.

Counsel for Jackson attached an exhibit to the brief filed in opposition to the motion to dismiss, which stated in part that the Board of Regents adopted a Code of Conduct on July 10, 1970, reading in part as follows:

"In order to insure due process any student, faculty member or other employee suspended, or who might receive other disciplinary action on the ground of violating any of the premises of this resolution, as well as all other rules and regulations established by the Board of Regents and also those established by the institutions, shall have at his or her discretion the right of interview of the action by the governing board constituted at each institution to handle disciplinary matters."

Like Exhibit "A", attached to the memorandum filed by counsel for the defendants in support of their motion to dismiss, the above statement was not sworn to or otherwise verified and we cannot consider it as an established fact, notwithstanding the court, we think erroneously, fully used, considered and quoted from Exhibit "A" in stating the facts in the memorandum opinion supporting his order sustaining the motion for summary judgment.

We are of the opinion that the case was not ripe for summary judgment and that important facts were not properly brought before the court. What, if any, policy the Board of Regents adopted after the enactment of the statute which provided that employees in the unclassified service should serve at the pleasure of the chief executive officer of the university or college, subject to policies approved by the Board of Regents, was not brought before the court.

Why did the Chancellor provide that the appointment of Jackson as Assistant to the Dean of Men for Black Students should continue in effect from July 1, 1970, to June 30, 1971, which appointment was made after the statute was enacted? Why did the Board of Regents order the termination of Jackson's employment, instead of the Chancellor? Was it the pleasure of the Chancellor that on July 27, 1970, Jackson's appoint-

ment as Assistant Dean should be terminated immediately? Was the contract for a specific term entered into by the Chancellor with Jackson a valid exercise of the Chancellor's powers? If it was, it created in Jackson a property right of which he could not be deprived except for cause, and he would be entitled to a hearing to review such order of termination. Was the reason Jackson's employment was terminated before the end of its term to retaliate against him, because he exercised his constitutional right to belong to black organizations and to be active therein and in the development of black studies programs and curriculum, as he alleged in his complaint, or was it because of the alleged ammunition episode, which he denied in his answer to No. 3 of the Request for Admissions and impliedly in his complaint, when he alleged the reason why his employment was terminated?

We are of the opinion that the record before the trial judge left undetermined material facts upon which the right of Jackson to the relief he sought depended, and hence the case, as stated above, was not ripe for disposition by summary judgment.

The case is reversed and remanded, with instructions to set aside the judgment entered and proceed further, in accordance with the views expressed in this opinion.