**Edward A. WINTER, Appellant,**

v.

**LOCAL UNION NO. 639, AFFILIATED WITH the INTERNATIONAL BROTHERHOOD OF TEAMSTERS and Maloney Concrete Company (two Cases).**

**Nos. 75–1948, 75–1949.**

United States Court of Appeals, District of Columbia Circuit.

Argued 13 Sept. 1976.

Decided 30 Dec. 1977.

Rehearing Denied Feb. 14, 1978.

John V. Long, Washington, D. C., for appellant.

Thomas J. Hart, Washington, D. C., with whom S. G. Lippman, Washington, D. C., was on the brief, for appellee Local 639 IBT.

Kevin W. Carmody, Washington, D. C., with whom Charles J. Steele, Washington, D. C., was on the brief, for appellee, Maloney Concrete Company.

Before TAMM, MacKINNON and WILKEY, Circuit Judges.

Opinion for the Court filed by Circuit Judge WILKEY.

Dissenting opinion filed by Circuit Judge MacKINNON.

WILKEY, Circuit Judge:

This case involves a suit by plaintiff Winter against his employer, Maloney Concrete Co., for breach of contract, and against his union, Teamsters Local 639, for breach of its duty of fair representation. The facts are simple and undisputed. In 1971, Winter filed a grievance asserting that seniority should be awarded on a company-wide, rather than on a plant-wide, basis. Winter's assertion contradicted long-standing industry practice under the current and preceding collective bargaining contracts.[1] After several meetings with management (one of which Winter attended) the union decided not to process the grievance further. Winter neither protested nor appealed. Three years later, Winter filed a similar grievance. The union arranged a meeting with management, which Winter failed to attend. Winter did not notify the union to explain his absence.[2] In light of Winter's failure to appear, and in light of the fact that Winter's 1974 grievance was largely a restatement of his 1971 grievance, which had been disposed of on the merits, the union declined to process the 1974 grievance further.

On 3 April 1974 Winter brought suit under § 301 of the Labor-Management Relations Act.[3] He alleged that Maloney had breached the collective bargaining contract by refusing to award him company-wide seniority, and that Local 639 had breached its duty of fair representation by refusing to process his grievance out of political hostility towards him. The district court granted summary judgment both to the union and to the employer, on the ground that Winter had failed to exhaust his internal union remedies.[4] We affirm both grants of summary judgment, although our reasoning departs somewhat from that of the district court.

## A. *Winter's Suit Against the Union*

The Landrum-Griffin Act specifically permits unions to require their members to exhaust internal union remedies before suing the union.[5] Although this language is discretionary, the circuit courts have unanimously upheld the exhaustion requirement and commended its utility.[6] In this case,

---

1. *See* Appendix (App.) 22–42, 70.

2. App. 29. In deposition, Winter stated that he refused to appear at the meeting because he had been told that his attendance would be "on [his] own time." App. 46. Operating under this assumption, he said, he feared that absence from work would have rendered him ineligible for weekend work assignments. App. 46–47. However, under the collective bargaining contract attendance at grievance meetings was an excused absence, and Winter's absence from work would thus not have prejudiced him. *See* App. 29.

3. 29 U.S.C. § 185(a) (1970):
   Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

4. The district court's orders granting summary judgment are reprinted in App. at 66, 89–90.

5. 29 U.S.C. § 411(a)(4) (1970):
   No labor organization shall limit the right of any member thereof to institute an action in any court, . . . *Provided,* That any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof . . . . .

6. *See, e. g., Ruzicka v. General Motors Corp.,* 523 F.2d 306, 311–12 (6th Cir. 1975) (citing cases); *Newgent v. Modine Mfg. Co.,* 495 F.2d 919, 927 (7th Cir. 1974); *Imel v. Zohn Mfg. Co.,* 481 F.2d 181, 183–84 (10th Cir. 1973), *cert. denied,* 415 U.S. 915, 94 S.Ct. 1411, 39 L.Ed.2d 469 (1974); *Brady v. Trans World Airlines, Inc.,* 401 F.2d 87, 104 (3d Cir. 1968), *cert. denied,* 393 U.S. 1048, 89 S.Ct. 680, 21 L.Ed.2d 691 (1969); *Neal v. System Bd. of Adj.,* 348 F.2d 722, 726 (8th Cir. 1965). Insistence on exhaustion of union remedies is usually rationalized as "staying the hand of 'judicial interference with the internal affairs of a labor organi-

the union constitution and by-laws offer several remedies and expressly require that they be exhausted.[7] The constitution provides that an aggrieved member may file charges with the local Executive Board; if he loses there, he may appeal to the General Executive Board, which may try the case *de novo* and must in any event render decision within 15 days.[8] The constitution also provides for direct appeal to the International president.[9] Winter concededly failed to avail himself of these remedies. He seeks to excuse his neglect by arguing that exhaustion of union remedies would have been futile.

■ Exhaustion of intra-union remedies could be futile for two reasons. First, the union constitution might provide no adequate procedural route to the relief requested. In this case, the plaintiff seeks both money damages and an injunction directing Local 639 to process his grievances nondiscriminatorily in the future.[10] Winter probably could not have obtained money damages through union disciplinary channels. The union constitution provides, however, that decisions and penalties imposed in disciplinary proceedings "may consist of . . . commands to do or perform, or refrain from doing or performing, specified acts."[11] Winter could thus have obtained some of

what he seeks, *viz.*, an injunction, by a favorable outcome in the union proceedings.[12] Since the courts generally have insisted on a "clear and positive showing of futility" before excusing a failure to exhaust,[13] we conclude that Winter cannot be excused on the ground that the absence of available procedures would have made exhaustion futile.

Exhaustion might be futile, secondly, because union officials are so hostile to a worker that he could not hope to get a fair hearing, regardless of the procedures available. The cases that have excused failure to exhaust on this ground, however, including the cases plaintiff cites,[14] have involved quite extreme facts.[15] Evidently, in order to prevail on this ground Winter must make a specific and convincing showing of union animus.

This showing can be made in two ways. First, it might be inferred from the circumstances surrounding the grievance process. In this case, however, the facts create no inference of union hostility, arbitrariness, or bad faith. Plaintiff was proffering, for the second time, what seems to have been a frivolous interpretation of the contract, and inexcusably failed to attend a grievance meeting the union had arranged. Given

---

zation until it has had at least some opportunity to resolve disputes concerning its own internal affairs.' " *Imel*, 481 F.2d at 183, *quoting Brady*, 401 F.2d at 104.

7. Teamsters, Const. art. xix, § 12(a) (1971); By-laws of the Drivers, Chauffeurs and Helpers Local Union No. 639, Washington, D. C., art. xxii.

8. Teamsters, Const. art. xix, §§ 1–3 (1971).

9. *Id.* art vi, § 2(a).

10. App. 10–11.

11. Teamsters, Const. art. xix, § 9(a) (1971).

12. Indeed, Winter does not seriously contend that the union procedures here were *per se* inadequate. *See* Brief of Appellant at 10–12; Reply Brief of Appellant at 4–5.

13. *Imel v. Zohn Mfg. Co.*, 481 F.2d 181, 184 (10th Cir. 1973), *cert. denied*, 415 U.S. 915, 94 S.Ct. 1411, 39 L.Ed.2d 469 (1974).

14. *See* Reply Brief of Appellant at 4.

15. *See, e. g., Fulton Lodge No. 2, IAM v. Nix*, 415 F.2d 212, 216 (5th Cir. 1969), *cert. denied*, 406 U.S. 946, 92 S.Ct. 2044, 32 L.Ed.2d 332 (1972) (exhaustion futile where remedy was personal appeal to officers with whom expelled member had "continuing difficulties"); *Farowitz v. Musicians Local 802*, 330 F.2d 999, 1003 (2d Cir. 1964) (exhaustion futile where appellate board had consistently opposed worker's position and had asserted its position in litigation for four years); *Calagaz v. Calhoon*, 309 F.2d 248, 260 (5th Cir. 1962) (exhaustion futile where appeal would be to officers against whom complaint directed); *Adamczewski v. Local 1487, IAM*, 84 L.R.R.M. 2791 (N.D.Ill. 1972) (exhaustion futile prior to enjoining illegal union disciplinary proceedings where other union members who had engaged in same conduct had already been sanctioned in such proceedings).

this, the union's election not to process his grievance further gives rise to no suggestion of hostility.

■ Second, a showing of hostility can be made by citing concrete evidence of personal animus. Winter does not do so. He presents some evidence that relevant union officials knew of his political activities in opposition to them.[16] He then makes conclusory allegations that the union was hostile to him on this account.[17] No evidence of actual hostility is shown. In fact, plaintiff's claim seems ultimately to be that he is excused from exhausting union remedies by the mere fact that he has made sworn allegations that the union's conduct was "politically motivated, in bad faith, and discriminatory."[18] This argument is without merit. In any suit alleging unfair representation, the union member will make allegations (sworn or unsworn) that the union's conduct was politically motivated, in bad faith, and discriminatory. That, indeed, is the gravamen of his case in chief. If such allegations suffice to justify failure to exhaust union remedies, the exhaustion requirement is a nullity.

Such allegations, at any rate, do not satisfy Fed.R.Civ.P. 56(e). In order to survive a motion for summary judgment under that rule, a party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Plaintiff here has set forth no specific facts showing that there is a genuine

issue regarding union hostility towards him,[19] and hence regarding the futility of exhausting available union remedies. For this reason, the district judge properly awarded summary judgment in favor of Local 639.

### B. Winter's Suit Against the Employer

■ The district court held that the defense of failure to exhaust intra-union remedies was available, not only to the union, but also to the employer. We disagree, at least on the facts of this case. The few courts that have considered this question have held, almost unanimously, that the defense of failure to exhaust union remedies is *not* available to the employer.[20] The reason is that the union constitution, which provides for the internal remedies, is a "contract" only between the union and its members, and the employer cannot avail himself of the union's contractual defense.[21] No court of appeals has held that the defense is available to the employer; one circuit has said in dictum that it is not.[22] The only court of appeals to suggest otherwise was the Seventh Circuit in *Orphan v. Furnco Construction Corp.*,[23] which implied that the employer might raise the exhaustion defense if he could show a *"formal appeal or other procedure provided by the Union constitution or by-laws which so certainly holds out the prospect of . . . relief that the plaintiffs could justifiably be ex-*

16. See Affidavit of Daniel George, App. 55–56.

17. See Complaint, App. 9–10; Brief of Appellant at 4, 12; Reply Brief of Appellant at 5, 13.

18. Brief of Appellant at 12.

19. As noted above, p. 150 *supra,* and as pointed out in the dissent, Diss. op. at 155, Winter presented some evidence that the business agent who processed his complaint was aware of his political activities. This evidence, however, standing alone, creates no genuine issue for trial on the question of union *hostility*: assuming that union officials knew of Winter's opposition, their refusal to process his grievance on the facts of this case suggests no hostility, unless we adopt the reasoning, rejected by the scholastics, of *post hoc, ergo propter hoc.* In most unfair representation cases, un-

ion officials will be *aware* of plaintiff's political activities; it would be odd if they were not. If a mere showing of this *awareness* sufficed to get a plaintiff past summary judgment for failure to exhaust union remedies, summary judgment would effectively be unavailable to the union on this issue.

20. See, e. g., Orphan v. Furnco Constr. Corp., 466 F.2d 795, 801 & n.12 (7th Cir. 1972) (citing cases).

21. Id. at 800–01.

22. See Retana v. Apartment Operators Local 14, 453 F.2d 1018, 1027 n.16 (9th Cir. 1972).

23. 466 F.2d 795 (7th Cir. 1972).

pected to have recourse to it before filing suit." [24] In *Orphan*, however, the constitution provided for no formal appeals procedure, but merely for "criminal-type prosecutions against Union members and officers charged with specified offenses." [25] The court held that the prospect of relief held out by such procedures was sufficiently uncertain to make the exhaustion defense unavailable to the employer. The procedures at issue here, significantly, are quite similar to those at issue in *Orphan*: the Teamsters' constitution likewise provides no procedures for appealing adverse grievance decisions, but only trial-type procedures for prosecuting offending union members. Even under the *Orphan* dictum, therefore, there is no circuit court authority for making the defense of failure to exhaust union remedies available to the employer on the facts of this case. [26]

This conclusion, however, does not end the matter. In the district court, the employer urged as its first ground for summary judgment that "[t]here was no breach of the collective bargaining contract by Maloney Concrete Company." [27] The employer repeats this argument here. [28] The trial court did not reach this question. However, this Court has held that "[a]n appellate court has discretion to uphold a summary judgment under a legal theory different from that applied by the trial court, and rest the affirmance 'on any ground that finds support in the record' . . . ." [29] The record in this case is replete with evidence that Maloney did not breach the collective bargaining contract by refusing to award Winter company-wide seniority. [30]

**24.** *Id.* at 801 (emphasis added).

**25.** *Id.*

**26.** Several district courts have concluded, to the contrary, that the exhaustion defense should generally be open to the employer. *See Bradley v. Ford Motor Co.*, 417 F.Supp. 23, 26 (N.D.Ill.1975); *Fleming v. Chrysler Corp.*, 416 F.Supp. 1258, 1266 (E.D.Mich.1975); *Brookins v. Chrysler Corp.*, 381 F.Supp. 563, 568–69 (E.D.Mich.1974); *Harrington v. Chrysler Corp.*, 303 F.Supp. 495 (E.D.Mich.1969). Several other district court opinions, whose holding is unclear, may go off on this ground. *See Brookins*, 381 F.Supp. at 568 (citing cases). The most convincing rationale for the general availability of the exhaustion defense to the employer derives, collaterally, from *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967) and *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976). In those cases, the Court held generally that the employer is entitled to rely on the outcome of a grievance arbitration, and is thus insulated from a breach of contract suit, unless the union breached its duty of fair representation during the grievance process. Accordingly, some district courts have reasoned that, once the union is dismissed from the suit owing to its member's failure to exhaust remedies, it would be inequitable to require the employer to defend the suit alone, since exhaustion of remedies might reveal the union's good faith and thus cause the contract action against the employer to evanesce. As the *Brookins* court stated:

> By exhausting his internal remedies the employee may be able to eliminate the very wrong of which he complains, not merely obtain a remedy therefor in another forum. If the union's wrongful refusal to continue the grievance were reversed *without prejudice to his rights*, the employee would no longer have a cause of action for breach of the duty of fair representation, and consequently would have no right under *Vaca* to sue his employer for breach of contract.

*Id.* at 569 (emphasis added).

Although this argument is not without appeal, it should be noted that, of the four district court cases cited above three, including *Brookins*, come from the Eastern District of Michigan and all four involve the UAW. The UAW, significantly, has what is probably the most elaborate and comprehensive system of internal appeals of any American union, culminating in an appeal to a non-partisan panel composed of eminent persons with no connection to the Auto Workers. The UAW procedures, virtually unique among unions, may well enable a worker to get redress "without prejudice to his rights." The Teamsters' "criminal-type" procedures, although they may permit Winter to obtain some relief, see p. 5 *supra*, are far less likely to "make him whole." *See* 381 F.Supp. at 569. For much the same reason that the *Orphan* dictum is inapplicable, therefore, we decline to embrace the *Brookins* rationale here.

**27.** App. 67.

**28.** Brief of Appellant Maloney Concrete Co. at 8–12.

**29.** *United States v. General Motors Corp.*, 171 U.S.App.D.C. 27, 48, 518 F.2d 420, 441 (1975) (Leventhal, J.).

**30.** *See* App. 22–42, 70. The collective bargaining contract was silent as to whether seniority was to be awarded on a company-wide or

Winter has presented no evidence to contradict Maloney's affidavits. For this reason, there is no genuine issue of fact for trial as to the interpretation of the contract and summary judgment should be awarded to the employer on the ground that there was no breach of the collective bargaining contract by it.

## CONCLUSION

Because Winter failed to exhaust his available internal union remedies, the district judge properly granted Local 639's motion for summary judgment. Because there exists no genuine issue as to the employer's breach of the collective bargaining contract, the district judge properly granted Maloney Concrete's motion for summary judgment. The decision of the district court accordingly is

*Affirmed.*

MacKINNON, Circuit Judge, dissenting:

Appellant Winter, a truck driver engaged in the delivery of concrete in the Washington, D. C. metropolitan area, is an employee of Maloney Concrete Company (hereinafter "Maloney") and a member of Local No. 639 of the Teamsters International Union. Maloney has several plants from which mixed concrete is delivered, and each driver is assigned to a particular plant. The collective bargaining agreement between Maloney and the union has a seniority provision which reads as follows:

When ability, merit, and physical fitness are equal, employees with the greatest seniority will be given preference in

advancement to higher-rated jobs, except promotions to positions excluded from the coverage of this agreement. Increases or decreases of working forces shall also be on the same basis.

(App. 9).

Winter's lawsuit alleges that Maloney breached this provision by according him only "plant wide" rather than "company wide" seniority, and that the union breached its duty of fair representation in its handling of two grievances that he filed in 1971 and 1974 protesting the company's failure to comply in this respect with the collective bargaining agreement.

On motion by the union for summary judgment, the district court dismissed the complaint as to the *union* on the ground that Winter had failed

to exhaust the internal remedies available to all union members under the constitution, such exhaustion being a prerequisite to commencement of any civil action, *Imel v. Zohn Manufacturing Co.,* 481 F.2d 181 (10th Cir. 1973), *cert. denied,* 415 U.S. 915, 94 S.Ct. 1411, 39 L.Ed.2d 469 (1974); *compare Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).

The district court also granted *Maloney's* motion for summary judgment for the following stated reasons:

In view of the Court's holding that plaintiff has failed to exhaust his internal union remedies, the Court is now compelled to dismiss plaintiff's complaint as to Maloney for similar reasons. *Vaca v. Sipes, supra; Republic Steel v. Maddox,* 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580

---

plant-wide basis. This is not to say, of course, that the contract was "ambiguous." *See* Diss. op. at 154. A collective bargaining contract is too slender a volume to answer all questions that conceivably could arise during the operation of a complex industrial enterprise. *See* Cox, *Reflections Upon Labor Arbitration,* 72 Harv.L.Rev. 1482, 1498–99 (1959). It is well established that when gaps in the contract's coverage occur, as they inevitably will, they are "to be filled in by reference to the practices of the particular industry and of the various shops covered by the agreement." *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 580, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409

(1960). The agreement in this case is a multiemployer contract between Local 639 and seven concrete companies. Six of Local 639's shop stewards (two employed by Maloney, four employed by the other companies) submitted sworn affidavits stating that it had long been the practice in their companies and in the industry as a whole to award seniority only on a plant-wide basis, and that they had never known the practice to be otherwise in their average 20-year experience on the job. App. 31–42. In view of these affidavits, which are uncontested, the "terms" of the collective bargaining contract are perfectly clear.

(1965); *Scott v. Anchor Motor Freight, Inc.*, 496 F.2d 276 (6th Cir.), *cert. denied*, 419 U.S. 868, 95 S.Ct. 126, 42 L.Ed.2d 107 (1974); *Hubicki v. ACF Industries, Inc.*, 484 F.2d 519 (3d Cir. 1973). (App. 90).

I agree with the majority opinion, on the facts of this case, that the defense of failure to exhaust *union* remedies is not available to the employer, Maloney[1]; but I disagree with its conclusion that it was proper for the district court to grant summary judgment on the alternative ground that "there was no breach of the collective bargaining contract by Maloney Concrete Company." In my opinion whether there was a breach of the collective bargaining agreement presents a genuine issue of material fact that must be resolved by testimony at trial. Fed.R.Civ.P. 56(c); *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962); *Ecology Center of Louisiana, Inc. v. Coleman*, 515 F.2d 860 (5th Cir. 1975); *Underwater Storage, Inc. v. United States Rubber Co.*, 125 U.S.App.D.C. 297, 371 F.2d 950 (1966), *cert. denied*, 386 U.S. 911, 87 S.Ct. 859, 17 L.Ed.2d 784 (1967), *on remand* 314 F.Supp. 546 (D.D.C.1970).

The affidavits filed by the appellees assert that it was a long-standing practice at Maloney and in the local industry in general to afford work opportunity to employees, under contracts such as the one involved here, on the basis of plant-wide rather than company-wide seniority (App. 25–42). Winter, however, while not disputing that plant-wide seniority may be the norm in the industry at large, insists that the specific terms of the collective bargaining agreement between Local 639 and Maloney are at variance with any such allegedly "established practice" and require company-wide seniority. The bargaining agreement does not explicitly refer to either "plant-wide" or "company-wide" seniority. The relevant provision, set forth above, is from the agreement made with the Maloney Company as a whole, not with its individual plants. In the absence of some specific provision or persuasive evidence to the contrary, an

---

1. Although I agree with the majority's holding that Maloney cannot rely on Winter's failure to exhaust his internal remedies, I adopt a slightly different rationale for doing so, based in part on the analysis in *Brookins v. Chrysler Corporation, Dodge Main Division*, 381 F.Supp. 563 (E.D.Mich.1974). In *Brookins*, the court gave a cogent summary of the dilemma that the ruling in *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967) has provoked:

> The answer [to whether an employer may rely on an employee's failure to exhaust his union remedies] seems to turn on whether the union's successful exhaustion defense goes to the merits of the claimed unfair representation or merely to the ripeness of the controversy or plaintiff's capacity to sue. If the former—*i. e.*, if a failure to exhaust internal remedies means that the duty of fair representation has not yet been breached—then plaintiff clearly cannot prove the contrary and the employer may properly rely on the employee's failure to exhaust contractual remedies, for he has through the judgment of dismissal as to the union lost his only legally valid excuse for failing to exhaust. In that sense the employer does indeed get a "free ride" on the union's defense. However, if the union's dismissal for failure to exhaust internal remedies recognizes that a breach of the duty of fair representation may have occurred, and holds only that a judicial remedy

for that breach is not presently available, then it seems that the plaintiff would be in a position to prove the existence of the breach despite the fact that he cannot at present maintain an action thereon. The wrong could still exist, and would be subject to proof; only the timing of the remedy would be affected by the union's dismissal from the case.

381 F.Supp. at 567–68.

Thus, by the same token that an exhaustion of internal union remedies is not an absolute requirement for suit against the union itself, it cannot be an absolute prerequisite to suit against the employer. In the instant case, it is my opinion that there is enough suspicion of union-employee hostility that appellant should not be forced to exhaust his internal union remedies before suing the union for breach of its duty of fair representation. Accordingly, the exhaustion requirement is clearly not "substantive" in the sense the *Brookins* opinion suggests, and thus the employer cannot rely upon it as a defense. Should Winter's claims of official hostility prove unsubstantiated, upon dismissal of his suit against the union his suit against Maloney must also be dismissed, *Vaca v. Sipes, supra*; but he should not as a matter of law be foreclosed from having a hearing on his grievances because he has not exhausted his union grievances.

agreement with a company looks to company-wide, not merely plant-wide, obligations. Maloney introduces a number of affidavits stating that the practice both at Maloney itself and in the industry at large was to have only plant-wide seniority. Not only, however, is evidence of general practice insufficient to override the express terms of a contract, but also, where a contract's meaning is unclear, summary judgment is inappropriate.

Although summary judgment is possible on questions of contractual interpretation, see, e. g., Parish v. Howard, 459 F.2d 616 (8th Cir. 1972); Green v. Valve Corp. of America, 428 F.2d 342 (7th Cir. 1970); Universal Fiberglass Corp. v. United States, 400 F.2d 926 (8th Cir. 1968), where the contract is ambiguous, such disposition is prohibited, see, e. g., Cram v. Sun Insurance Office, Ltd., 375 F.2d 670 (4th Cir. 1967); Cinocca v. Baxter Laboratories, Inc., 400 F.Supp. 527 (E.D.Okl.1975).

Moreover, the burden is on the party moving for summary judgment to prove that there are no material issues of fact (such as ambiguous contract terms), see, e. g., Adickes v. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Action, 538 F.2d 180 (8th Cir. 1976), cert. denied, 429 U.S. 1040, 97 S.Ct. 738, 50 L.Ed.2d 751 (1977); Evers v. Buxbaum, 102 U.S.App.D.C. 334, 253 F.2d 356 (1958); and disputed issues of fact may not be tried by affidavit, Sartor v. Arkansas Malt Gas Corp., 321 U.S. 620, 64 S.Ct. 724, 88 L.Ed. 967 (1944); Redman v. Warrener, 516 F.2d 766 (1st Cir. 1975); Gutor International AG v. Raymond Packer Co., Inc., 493 F.2d 938 (1st Cir. 1974); Hollander v. Pan Am World Airways, Inc., 382 F.Supp. 96 (D.Md.1973); 6 Moore's Federal Practice ¶ 56.11[1.–2] (2d ed. 1977).

In this case, it cannot be successfully maintained that the terms of this collective bargaining agreement are clear on their face, cf. Dworman v. Mayor and Board of Aldermen, Governing Body of Town of Morristown, 370 F.Supp. 1056 (D.N.J.1974); La Salle Co. v. Kane, 8 F.R.D. 625 (E.D.N.

Y.1949), and Maloney has not carried its burden of persuasion that they are in fact unambiguous. The court, then, is presented with a genuine issue of material fact that can be resolved only at trial, to wit, whether:

> The alleged "established practice in the concrete industry in the Washington metropolitan area that work opportunity is offered employees in the order of seniority on a plant . . . basis . . ." as applied by defendants in this case, violates the seniority provisions of the agreement and discriminatorily violates plaintiff's rights.

(App. 52).

The question of contract interpretation is sufficient to preclude summary judgment in favor of Maloney. In addition, the other issues of material fact presented by Winter's claim that the union breached its duty of fair representation by failing to process his grievances and persisting for political reasons in its refusal to enforce his seniority rights (App. 9–10, 49) would require a similar conclusion as regards Winter's case against Local 639.

On the controverted issue as to whether the union discriminatorily refused to enforce his contractual seniority rights, Winter swears that his allegations of political motivation are made on "personal knowledge of the facts" (App. 11), while the Local contends that it processed plaintiff's grievances and disposed of them on the merits.

We need not reach the question of which of the parties' version of the facts is more credible. Any such determination is clearly to be made by the fact-finder in an actual trial. This court cannot uphold the summary disposition of genuine issues of material fact. In a summary judgment proceeding a court cannot try issues of fact, but only determine whether there are such issues to be tried, see, e. g., Heyman v. Commerce and Industry Insurance Co., 524 F.2d 1317, 1319–1320 (2d Cir. 1975); and genuine questions of fact must be resolved at trial, not merely by affidavits such as were before the district court in this case, see, e. g., Judge v. City of Buffalo, 524 F.2d 1321 (2d

Cir. 1975); *Redman v. Warrener*, 516 F.2d 766 (1st Cir. 1975); *Aeronca, Inc. v. Style-Crafters, Inc.*, 499 F.2d 1367 (4th Cir. 1974), later appeal, 546 F.2d 1094 (1976); *Aulds v. Foster*, 484 F.2d 945 (5th Cir. 1973); *Jackson v. Griffith*, 480 F.2d 261 (10th Cir. 1973).

The union contends that Winter "made no attempt to invoke his available internal union remedies" (App. 13), and he in turn rejoins that any attempt to do so would have been futile (App. 9–10, 49). The issue is thus raised as to whether or not the political antagonism of the union to Winter was sufficiently intense that it would be unreasonable to suppose that his grievances would be fairly advanced by the union. One need not exhaust union remedies if they are shown likely to be futile. *Cf. Verville v. International Ass'n of Machinists & Aerospace Workers*, 520 F.2d 615, 620 (6th Cir. 1975); *Semanick v. UMW District 5*, 466 F.2d 144, 151 (3d Cir. 1972); *Farowitz v. Associated Musicians of Greater New York*, 330 F.2d 999 (2d Cir. 1964).

The critical evidence on this point relates to whether the business agent, Marcey, who handled—or mishandled as the case may be—both of Winter's grievances knew when he did so of Winter's activities in support of Marcey's opponents within the union. Marcey claims that he had "no knowledge other than the allegations in the complaint that Winter was engaged in any internal union political activity" (App. 30). His position, however, is controverted by the affidavit of another member of Local 639 who states that he recollects "Mr. Marcey was present at most of [the] meetings, and in a few cases I believe he chaired the meetings in the absence of President DeBrouse" when "Mr. Winter was critical of seniority practices and use of temporary employees in the construction industry, and had some argument on these or related matters with President DeBrouse during meetings" (App. 56). When the affidavits reveal such a conflict over facts that substantially affect the position of a party on a material matter, summary judgment is not to be granted, *see, e. g., Jackson v. Griffith, supra*, 480 F.2d at 267; *Machinery Center, Inc. v. Anchor National Life Insurance Co.*, 434 F.2d 1, 6

(10th Cir. 1970). The materiality of this evidence does not lie in a "mere showing of . . . awareness" of Winter's political activity but in Marcey predicating his denial of hostility to Winter on the claim that he never knew of his political activity within the union. This evidence is thus material on the issue of hostility.

The majority opinion gives far too short shrift to the importance of the fact that the union officials knew of appellant's agitation and activities against their leadership. Of course, this fact alone is not conclusive, but it certainly is probative. In my view, appellant has suggested sufficient other evidence of the union's hostility that, taken together with his expressed dissatisfaction with the union, he should have his day in court. Knowledge of a union member's protest activities may not prove union bias against him, but—human nature being what it is—it must lead the court closely to scrutinize such evidence for the possibility of such hostility. Applying such scrutiny here, summary judgment is unjustifiable.

At trial, the question of whether Marcey and the union did or did not process Winter's grievances in accordance with their statutory duty must be resolved. At present—despite the broad discretion traditionally accorded to unions in the exercise of their obligation of fair representation, *see Ford Motor Co. v. Huffman*, 345 U.S. 330, 338, 73 S.Ct. 681, 97 L.Ed. 1048 (1953); Blumrosen, *The Workers and Three Phases of Unionism: Administrative and Judicial Control of the Worker-Union Relationship*, 61 Mich.L.Rev. 1435, 1469–1472 (1963)—genuine issues exist as to whether these complaints were processed at all. Assuming that they were, the issue remains as to whether they were fairly evaluated, whether Winter was adequately advised, etc. Similarly, the question of the construction of the seniority provision of the collective bargaining agreement must be resolved in order to decide the suits against Maloney. When such issues remain controverted and unresolved, the only acceptable procedure is to deny summary judgment, go beyond the affidavits, and hold a trial on the merits.

It is thus my conclusion that the summary judgments granted to Maloney and Local 639 should be vacated and the cases remanded for further proceedings. To this end, I respectfully dissent.